859 So.2d 1224 (2003)
STATE of Florida, Petitioner,
v.
Eddie A. VEILLEUX, Respondent.
Nos. 2D02-3226, 2D02-3256.
District Court of Appeal of Florida, Second District.
November 7, 2003.
*1225 Bernie McCabe, State Attorney and William H. Burgess, III, Assistant State Attorney, Clearwater, and Charles J. Crist, Jr., Attorney General, Tallahassee and Katherine V. Blanco, Assistant Attorney General, Tampa, for Petitioner.
Bob Dillinger, Public Defender and Joy K. Goodyear, Assistant Public Defender, Clearwater, for Respondent.
*1226 COVINGTON, Judge.
The State petitions this court to issue a writ of certiorari and quash the trial court's interlocutory pretrial order granting Eddie A. Veilleux's motion in limine. Because the trial court did not depart from the essential requirements of the law, we deny the State's petition.

BACKGROUND
On February 16, 2002, police stopped Mr. Veilleux for driving a vehicle that had been reported stolen. The State alleges that Mr. Veilleux told officers his name was "Mark Lee White" and that he had a valid New Hampshire driver's license. The State also submits that Mr. Veilleux signed traffic citations for reckless driving and driving without a valid driver's license using the name "Mark Lee White." The police discovered Mr. Veilleux's true identity when they heard a passenger refer to him by a nickname.
The State charged Mr. Veilleux with forgery pursuant to section 831.01, Florida Statutes (2002). He filed a motion in limine to exclude the forged traffic citations based on section 316.650(9), Florida Statutes (2002), and Dixon v. State, 812 So.2d 595 (Fla. 1st DCA 2002). Section 316.650(9) provides that traffic citations "shall not be admissible evidence in any trial." The First District in Dixon specifically held that section 316.650(9) prohibits trial courts from admitting traffic citations as evidence in trials for forgery of the citations. Id. In granting Mr. Veilleux's motion in limine, the trial court stated, "[T]he law is such that I am bound to follow the Dixon case." Dixon is the lone district court case directly on point and is factually indistinguishable from this case.
In Dixon, the defendant gave the police officer who stopped him a false name. Id. at 595-96. In addition, he signed a traffic citation using the false name. Id. at 596. When his true identity was discovered, the defendant in Dixon was charged with forgery[1] as well as driving without a valid driver's license. Id. Dixon filed a motion in limine to prohibit the State from introducing the traffic citation as evidence. Id. The trial court denied his motion, finding that the legislature could not have intended the exclusion of a traffic citation when the execution of the citation is the basis of the offense at trial. Id. The First District reversed, observing that section 316.650(9) contains no exceptions to its clear and unambiguous prohibition against admitting a traffic citation as evidence in any trial. Dixon, 812 So.2d at 596. The court stated:
It is a well-established principle of statutory interpretation that an unambiguous statute is not subject to judicial construction, no matter how wise it may seem to alter the plain language of the statute. State v. Jett, 626 So.2d 691, 693 (Fla.1993). "Moreover, `[e]ven where a court is convinced that the legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity.'" St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla. 1982) (quoting Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918)).
Id.
The Dixon court pointed out that while courts may interpret a statute in a way that contradicts the statute's plain language where there is "discernable legislative intent" to support such an interpretation, *1227 see Vildibill v. Johnson, 492 So.2d 1047, 1049 (Fla.1986), the court in Dixon had no basis to discern a legislative intent to make an exception to section 316.650(9)'s unambiguous language. Dixon, 812 So.2d at 596. Accordingly, the First District held that, "in view of the absolute mandatory terms of section 316.650(9)," the trial court erred when it denied the defendant's motion in limine in his forgery trial. Id. at 596.
Like the First District in Dixon, we have no basis in this case to discern a legislative intent to make an exception to section 316.650(9)'s unambiguous language. The First District concluded it is the legislature's exclusive province to amend section 316.650(9) if it did not intend the result the statute's plain language mandates. We agree. As Chief Justice Berger stated in Tennessee Valley Authority v. Hill, 437 U.S. 153, 193, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) (quoting Hill v. TVA, 549 F.2d 1064, 1069 (6th Cir.1977)):
Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end. We do not sit as a committee of review, nor are we vested with the power of veto.... [I]n our constitutional system the commitment to the separation of powers is too fundamental for us to pre-empt congressional action by judicially decreeing what accords with "common sense and the public weal." Our Constitution vests such responsibilities in the political branches.
"If the statute is clear and unambiguous `that is the end of the matter, for the court... must give effect to the unambiguously expressed intent of Congress.'" Bd. of Governors v. Dimension Fin. Corp., 474 U.S. 361, 368, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986) (quoting Chevron, U.S.A., Inc., v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).
We acknowledge that, as the Dixon court observed, applying the plain and ordinary meaning of the words of section 316.650(9) to these facts "will make convictions for forgery of a traffic citation more difficult...."[2] 812 So.2d at 596. As the trial court here noted, however, the State can bring in evidence from the officer who issued the citation and witnessed the false signature, as well as other evidence of the defendant's identity and intent.

THE LIMITED STANDARD OF REVIEW ON CERTIORARI
Even if we disagreed with the First District's holding in Dixon, the limited standard of review on certiorari would preclude us from granting relief in this case. An interlocutory pretrial order in a criminal case excluding evidence is subject to certiorari review only when the order departs from the essential requirements of the law and plenary appeal cannot provide an adequate remedy. Trepal v. State, 754 So.2d 702, 705 (Fla.2000); State v. Pettis, 520 So.2d 250, 252-53 (Fla.1988); State v. Busciglio, 426 So.2d 1233, 1233 (Fla. 2d DCA 1983). The State also must demonstrate that the trial court's departure resulted in a miscarriage of justice. Ivey v. Allstate Ins. Co., 774 So.2d 679, 682 (Fla. 2000).
"Existing case law establishes that the departure from the essential requirements *1228 of the law necessary for the issuance of a writ of certiorari is something more than a simple legal error...." Id. A court's misapplication of the correct law or "erroneous interpretation of [a] law" does not rise to the necessary level. Id. at 682, 684. The court in Ivey stated: "[A] decision made according to the form of the law and the rules prescribed for rendering it, although it may be erroneous in its conclusion as applied to the facts, is not an illegal or irregular act or proceeding remedial by certiorari." Id. at 682 (quoting Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 528 (Fla.1995) (additional citations omitted)). Rather, certiorari review limits the proper inquiry to "whether the circuit court afforded procedural due process and whether it applied the correct law." Id.
Here, the trial court applied the correct law, Dixon, which Florida law required it to follow. See Pardo v. State, 596 So.2d 665, 666 (Fla.1992) (holding that in absence of interdistrict conflict, district court decisions bind all Florida trial courts); Bane v. Bane, 750 So.2d 77, 78 (Fla. 2d DCA 1999) (holding trial court committed clear error in ruling contrary to district court decision that was directly on point but with which it disagreed); Anderson v. Anderson, 746 So.2d 525, 526 (Fla. 2d DCA 1999).
The dissent would hold that we may grant certiorari based on the statute's violation of the clearly established constitutional principle of law that only the supreme court can promulgate procedural rules and on the argument that section 316.650(9) is a procedural rule that has not been approved by the supreme court. See art. V, § 2(a), Fla. Const.; Allstate v. Kaklamanos, 843 So.2d 885 (Fla.2003) (holding "`clearly established law' for certiorari purposes can derive from a variety of legal sources," including, among others, constitutional law).[3] A statutory provision is procedural if it "encompass[es] the course, form, manner, means, method, order, process or steps by which a party enforces substantive rights or obtains redress for their invasion. `Practice and procedure' may be described as the machinery of the judicial process as opposed to the product thereof.... It is the method of conducting litigation involving rights and corresponding defenses." Haven Fed. Sav. & Loan Ass'n v. Kirian, 579 So.2d 730, 732 (Fla. 1991).
When the "legislatively imposed `procedure' is interfering with and intruding upon the procedures and processes of this Court and conflicts with this Court's own rule regulating the procedure," a violation of the constitutional limitation on the legislature's enactment of procedural law occurs. Jackson v. Fla. Dep't of Corr., 790 So.2d 381, 385 (Fla.2000). See also Haven Fed. Sav. & Loan, 579 So.2d at 732; Sch. Bd. of Broward County v. Surette, 281 So.2d 481, 483 (Fla.1973).
Citing Jackson, 790 So.2d at 385, a plurality of the supreme court in Looney v. State, 803 So.2d 656 (Fla.2001), concluded a procedural statutory provision did not usurp its constitutional rulemaking authority. Id. at 676. The statute challenged in Looney was section 921.141(7) (Supp.1996), allowing admission of victim impact evidence. Id. at 675. The Looney opinion reasoned the statute should be upheld because the supreme court previously "had promulgated no rule or procedure governing the admissibility of victim impact evidence." *1229 Id. at 676. Similarly in this case, the supreme court has promulgated no rule or procedure governing the admissibility of traffic citations as evidence. Thus, we cannot say this provision is unconstitutional or that the trial court's decision violates clearly established law, even under Kaklamanos.

Accordingly, we deny the petition for writ of certiorari.
We certify to the supreme court the following question which we determine to be of great public importance:
WHEN THE SOLE ISSUE IN A CRIMINAL PROSECUTION IS THE PLACEMENT OF A FORGED SIGNATURE ON A TRAFFIC CITATION, MAY THE STATE INTRODUCE THE CITATION BEARING THE SIGNATURE INTO EVIDENCE TO PROVE THE FORGERY, NOTWITHSTANDING THE LANGUAGE OF SECTION 316.650(9), FLORIDA STATUTES (2002)?
SALCINES, J., Concurs.
ALTENBERND, C.J., Dissents with opinion.
ALTENBERND, Chief Judge, Dissenting.
The State seeks certiorari review of the trial court's order granting a motion in limine and precluding the State from introducing into evidence an official document in Eddie A. Veilleux's trial on the charge of forgery. The official document is a traffic citation that Mr. Veilleux allegedly signed with the signature of "Mark Lee White." Although I understand the majority's reluctance to use certiorari for this purpose, I would grant the petition and permit the State to introduce the signature on this official document. I would announce express conflict with the First District's decision in Dixon v. State, 812 So.2d 595 (Fla. 1st DCA 2002). Finally, I would hold that section 316.650(9), Florida Statutes (2002), should not be followed as a procedural rule of evidence until such time as the supreme court adopts this rule of evidence.
The State charged Mr. Veilleux with forgery of a public record pursuant to section 831.01, Florida Statutes (2002). He allegedly signed a traffic citation on February 16, 2002, using the name, "Mark Lee White," instead of his actual name. After the State filed the information, Mr. Veilleux sought a motion in limine to prevent the introduction of the allegedly forged signature into evidence on the ground that section 316.650(9) precluded the introduction of a traffic citation into evidence and that the relevant signature was on a traffic citation. His motion was directly supported by the First District's majority decision in Dixon, 812 So.2d 595 (holding trial court was prohibited by statute from admitting traffic citation on which defendant allegedly forged signature). The trial court concluded that it was bound by the Dixon decision and ruled that the traffic citation containing the alleged forgery could not be introduced into evidence. The State then filed this petition for writ of certiorari.
Section 316.650(9) was first enacted in 1963 as part of a law creating a uniform traffic ticket. See ch. 63-14, § 2, Laws of Fla. It states in its entirety: "Such citation shall not be admissible evidence in any trial." The First District in Dixon essentially ruled that this statute is clear and unambiguous and prevents any portion of the physical document constituting a uniform traffic citation from being introduced in evidence under any circumstance. Dixon, 812 So.2d at 596. The State primarily argues that the majority decision in Dixon places an unnecessarily expansive interpretation upon section 316.650(9). It encourages *1230 this court to adopt reasoning similar to that of the dissent written by Judge Polston on Dixon.

I.
I agree with the State that the First District used an unnecessarily expansive interpretation of section 316.650(9). Although the First District claimed that it was simply reading a clear and unambiguous statute, it obviously interpreted the phrase "such citation" to mean the entire physical document including all signatures and other denotations on that document. I do not understand why the driver's signature is clearly and unambiguously a portion of "such citation." In the context of the initial enactment, section 316.650(9) was enacted to make certain that uniform traffic citations would not become admissible as business records and that traffic officers would still be required to attend traffic court. This assured that charged drivers could confront the State's primary witness against them in traffic court. Nothing about this statute suggests that it was created because the legislature intended to bar prosecutions for forgery in this context.
The rule barring the judiciary from interpreting or construing a clear and unambiguous statute was not created as a method for the judiciary to make the legislature look foolish. It was created to assure that the judiciary gave proper respect to the legislature's power to enact law and establish policy. This rule reflects the separate power of the legislature. See State v. Brigham, 694 So.2d 793, 797 (Fla. 2d DCA 1997). If the legislature clearly and unambiguously enacts a rule promoting a policy with which the judiciary disagrees, absent constitutional infirmities, the judiciary must follow the legislative directive.
Language tends to be an imprecise tool. Sadly, a clear and unambiguous sentence in the English language is the exception rather than the rule. When several lawyers are involved in the drafting process, unambiguous clarity becomes an even rarer event. If subjected to the rigors of linguistic analysis by philosophers, virtually any sentence contains ambiguity. See generally Ludwig Wittgenstein, Preliminary Studies for Philosophical Investigation, generally known as The Blue and Brown Books (N.Y. Harper Press 1958). Especially when a sentence or a phrase is examined without thought to its surrounding context, it may appear at first glance more clear than it actually is.
Thus, the courts should hesitate to announce that a statute is clear and unambiguous when the result creates a judicial rule that the legislature never foresaw, never intended to create, and will most likely overrule with a new statute in a future session. See Martin v. St. Paul Fire & Marine Ins. Co., 670 So.2d 997 (Fla. 2d DCA 1996). This is why Learned Hand did not wish to make a "fortress" out of the dictionary. See Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.1945). It is also why we do not use a "literal" interpretation of a statute if it leads to an absurd result. See Parker v. State, 406 So.2d 1089 (Fla.1981). We do not give proper respect to the legislature when we use its words to reach an illogical outcome, unsupported by any feasible public policy, using the justification that the outcome is driven by a statute's clear and unambiguous words.[4] The judiciary should only reluctantly *1231 reach such an outcome when no reasonable interpretation of the relevant statute exists to achieve a logical outcome and the only way to achieve a correct rule of law is to compel the legislature to enact a new one.
If we change the facts a little in this case, it is easier to demonstrate that a literal interpretation of the phrase "such citation" requires absurd outcomes. Hypothetically, if Mr. Veilleux had been charged with first-degree murder and he wished to introduce a traffic citation as alibi evidence to establish that he was receiving a traffic ticket in another county at the time of the murder, it is inconceivable to me that a court could constitutionally prohibit him from introducing this document as evidence. Yet, if read literally, this statute would prevent anyone from introducing the traffic citation in any court proceeding.
"Such citation" can reasonably be interpreted to mean the written information placed on the document to explain the charges and to describe the alleged traffic offense. The citation is not the piece of paper, but its factual, hearsay content. Whether the officer writes this information on a uniform citation form or a scrap of paper, I agree that this written content should be inadmissible if the statute is a valid rule of evidence. On the other hand, portions of the document not describing the traffic offense can be viewed separate from the "citation." Thus, in my hypothetical, I would hold that Mr. Veilleux could introduce the document, excluding the charges and the description of the charges, to establish where he was at the date and time of an alleged murder.
Likewise, I believe the State should be able to introduce the document without its content in order to prove a prima facie case of forgery. Without the content, it can be identified by the police officer as a public record document that Mr. Veilleux was required to sign with his true legal name in the presence of the officer. The officer can identify the signature placed on this official document by Mr. Veilleux. The content of the document and the fact that it is a traffic citation should be irrelevant to the charge of forgery; in fact, it could be omitted from the trial. Mr. Veilleux might open the door for testimony about the content of the document by denying that the document was a public record document, but we do not need to reach that issue at this time.

II.
Although I believe this court could issue the petition for writ of certiorari based upon the State's argument, implicit within its argument is an even stronger reason to grant certiorari relief in this case. Section 316.650(9), at least in this context, is purely a procedural rule of evidence. Only the supreme court can create a procedural rule of evidence. See art. V, § 2(a), Fla. Const.; see also In re Florida Evidence Code, 372 So.2d 1369 (Fla.1979), clarified by In re Evidence Code, 372 So.2d 1369 (Fla.1979). Section 316.650(9) does not define a crime or establish any substantive law. Particularly as interpreted in Dixon, it creates a procedural rule requiring the trial court to exclude relevant evidence, critical to a criminal prosecution, which would otherwise be inadmissible under chapter 90, Florida Statutes (2002), under these circumstances.
Although it is sometimes difficult to determine whether a statute creates a rule of *1232 procedure as compared to a substantive right, this statute applied in a forgery prosecution is purely a procedural rule of evidence. Cf. In re Florida Rules of Criminal Procedure, 272 So.2d 65 (Fla. 1972) (characterizing difficult area of substance and procedure as twilight zone); State v. Garcia, 229 So.2d 236 (Fla.1969) (noting difficulty determining whether rule relates to matter that is substantive or procedural); see also Glendening v. State, 536 So.2d 212, 214-15 (Fla.1988) (explaining difficulty in discerning substantive rights that change ultimate facts necessary to establish guilt, versus procedural rules that simply govern how certain evidence is admitted in ex post facto analysis); State v. Dionne, 814 So.2d 1087 (Fla. 5th DCA 2002) (same). I can find no record that the supreme court has ever adopted this statute as a rule of procedure. See, e.g., In re Florida Evidence Code, 675 So.2d 584 (Fla.1996); In re Florida Evidence Code, 638 So.2d 920 (Fla.1993); In re Amendment of Florida Evidence Code, 497 So.2d 239 (Fla.1986). As a result, I do not believe that a trial court is bound to obey this statute as a procedural rule of evidence until such time as the supreme court adopts it. Because the supreme court retains the authority to regulate court procedure, neither this district court nor the First District has the authority to create a new procedural rule of evidence. See art. 5, § 2(a), Fla. Const.

III.
I understand that certiorari is a common law remedy that should be applied sparingly to correct only irreparable legal errors that result in a miscarriage of justice. See Haines City Cmty. Dev. v. Heggs, 658 So.2d 523 (Fla.1995); Stilson v. Allstate Ins. Co., 692 So.2d 979 (Fla. 2d DCA 1997). The discussion in Ivey might suggest that we have no power to correct this error. Ivey v. Allstate Ins. Co., 774 So.2d 679 (Fla.2000). I admit that to the extent the trial court followed the only available precedent, it did not depart from the established law.
Recently, however, the supreme court has suggested that we may use certiorari review to correct a somewhat more expansive list of errors. See Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885 (Fla.2003) (stating, "[t]hus, in addition to case law dealing with the same issue of law, an interpretation or application of a statute, a procedural rule, or a constitutional provision may be the basis for granting certiorari review"). Id. at 890, 897. Even though supported by a majority decision from the First District, an interpretation of a statute that purports to create a rule of evidence excluding relevant evidence for no logical reason, when the rule has not been adopted by the supreme court as required by the Florida Constitution, would appear to be a circumstance where certiorari relief should be available.
The fact that this is a criminal case and the issue is one that will limit critical evidence at trial also affects the analysis. Double jeopardy will prevent the State from seeking review of this issue when the trial court acquits Mr. Veilleux for its failure to prove a forgery. Thus, there can be little dispute that the error in this case is irreparable on direct appeal. It will be difficult for other districts to obtain direct appeals of cases in which they would have the opportunity to conflict with the First District's decision in this procedural context. I believe that a district court decision that creates a rule of evidence in this context is a miscarriage of justice that entitles this court to act. See State v. Pettis, 520 So.2d 250 (Fla.1988).
Accordingly, I would grant this petition for writ of certiorari.
NOTES
[1] "Florida courts have recognized that signing another person's name to a traffic citation constitutes a forgery." Dixon, 812 So.2d at 596 (citing Rushing v. State, 684 So.2d 856 (Fla. 5th DCA 1996)).
[2] The elements of forgery of a traffic citation pursuant to section 831.01 are: (1) the defendant signed someone else's name on a traffic citation (2) with intent to injure or defraud any person. See Rushing v. State, 684 So.2d 856 (Fla. 5th DCA 1996).
[3] It is notable that in Kaklamanos, no appellate case controlled the issue and bound the trial court. See 843 So.2d at 890. The supreme court held the intent of the personal injury protection (PIP) statute was "clearly established law" upon which certiorari review could be granted. Id.
[4] This is a case in which I would narrow the scope of the statute, not expand it. It has long been recognized that a court has more power to limit the application of a statute than to expand it. A court is less likely to interfere with the legislature's role in establishing public policy when it guards against statutory overbreadth. See generally William D. Popkin, Materials on Legislation: Political Language and the Political Process at 32 (2d ed.1997).