ALTENBERND, Judge.
 

 The Department of Highway Safety and Motor Vehicles seeks certiorari review of circuit court orders entered in two separate cases. In each case, the circuit court granted a driver’s petition for writ of cer-tiorari and quashed the Department’s order suspending the driver’s license for refusing to submit to a breath-alcohol test. Because each case presents the identical issue, we have consolidated the cases on our own motion for purposes of this opinion. We grant the Department’s petition for writ of certiorari in both cases and quash the circuit court opinions.
 

 We hold that the Department may validly suspend a driver’s license for a driver’s refusal to submit to a breath-alcohol test when a law enforcement officer offers the driver the option of taking a breath test, a blood test, or a urine test. The fact that the officer provides the driver with additional alternative tests that may be more invasive but more accurate does not negate the fact that the officer asked the driver to take the required test. We further hold that as a district court, we have the authority to grant common law certiorari relief from a circuit court opinion that applied or obeyed existing precedent from another district court if we conclude that the other district court’s opinion misinterpreted clearly established statutory law.
 

 I.
 

 On August 26, 2007, at approximately 1:30 a.m., Susan Nader was stopped by a Tampa police officer because she was driving with only her parking lights on and had stayed at an intersection through more than one cycle of the traffic lights. After she failed a roadside sobriety test, she was ai'rested and transported to a breath test center operated by the Hills-borough County Sheriffs Office. The standard report prepared at that center, identified on the form as “HSMV 78054 (Rev. 06/02)S,” reflects that the deputy handling the case asked her “to submit to a breath, urine, or blood test to determine the content of alcohol in his or her blood or breath.” She refused.
 

 On September 1, 2007, a deputy sheriff stopped Deborah Mclndoe when she failed to stop at a DUI checkpoint and instead drove through the safety check lane at a speed of 43 miles per hour. When Ms. Mclndoe was stopped, she failed a roadside sobriety test. She was arrested and transported to a breath test center operated by the Hillsborough County Sheriffs Office. The standard report prepared at that center, identified on the form as “HSMV 78054 (Rev. 03/03)S,” reflects that the deputy handling the case requested her “to submit to a breath, urine, or blood test to determine the content of alcohol in his or her blood or breath.” She refused.
 

 Thus, in each of these cases, the standard report form indicated that the inves
 
 *707
 
 tigating officer explained the implied consent law
 
 [1]
 
 to the driver and asked her whether she would submit to a “breath, blood, or urine” test. Because each woman refused, the Department sought to suspend each woman’s driver’s license for a period of one year.
 
 See
 
 §§ 316.1932(l)(a)(l)(a), 322.2615(1), Fla. Stat. (2007).
 

 Both Ms. Nader and Ms. Mclndoe sought an administrative hearing. They both argued that the implied consent warnings were improper in that the officers asked if they would submit to a “breath, blood, or urine” test, when the only test lawfully required by the implied consent law was a breath test. In each case, it appears neither the driver nor the relevant deputy sheriffs testified; the argument was based entirely on the language of the two standard forms used by the deputies in the breath test centers. The hearing officer rejected this argument in both cases and sustained the suspensions. Both women then sought certiorari review in the circuit court,
 
 see
 
 § 322.2615(13), arguing again that the implied consent warnings given were improper and that the license suspensions were thus invalid.
 

 The circuit court, in two separate opinions written by Judge James M. Barton, II, granted each woman’s petition but expressed some reluctance. The circuit court concluded it was bound by the Fourth District’s opinion in
 
 State, Department of Highway Safety & Motor Vehicles v. Clark,
 
 974 So.2d 416 (Fla. 4th DCA 2007). Judge Barton noted in each of the opinions, “But for the
 
 Clark
 
 opinion, the Court would deny the instant petition. The only test which [the driver] was specifically offered was the breath test. There is no indication that [the driver] felt that she was also obligated to take either or both of the other two tests.”
 

 In
 
 Clark,
 
 as in these two cases, the investigating officer informed Ms. Clark that her driving privileges would be suspended if she refused to submit to a “breath, blood, or urine test” under circumstances where the breath test was the only required test. 974 So.2d at 417. Ms. Clark refused, and the Department suspended her license. The circuit court, however, granted Ms. Clark’s petition for writ of certiorari and quashed the Department’s order, finding the warning given was improper because it included the reference to a blood or urine test. The Fourth District then denied the Department’s petition for writ of certiorari. Noting that the error in the implied consent warning “may have misled Ms. Clark into thinking that she would have to submit to a more invasive test,” the court concluded, “[T]he circuit court did not depart from the essential requirements of the law in holding that, where the officer’s warning did not comply with the statute, Ms. Clark’s license could not be suspended under the statute.”
 
 Id.
 
 at 418.
 

 From the short opinion in
 
 Clark,
 
 we cannot determine precisely what the officer told the driver that may have “misled” her. The opinion at least implies that the officer merely gave the driver the option of a breath, blood, or urine test. It is entirely possible that
 
 Clark
 
 is also based on the language of a standard form used in a breath test center. To the extent
 
 Clark
 
 suggests that the request to submit to a “breath, blood, or urine” test is insufficient to comply with the statute and thereafter prevents the suspension of the driver’s license for refusing to submit to a breath-alcohol test, we disagree with the opinion in
 
 Clark.
 
 We also conclude that a circuit court’s opinion quashing a license suspen
 
 *708
 
 sion on this basis is a departure from the essential requirements of the law meriting common law certiorari relief.
 

 II.
 

 Section 316.1932(l)(a)(l)(a), which is commonly referred to as the “Implied Consent Law,” provides:
 

 Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by so operating such vehicle, deemed to have given his or her consent to submit to an approved chemical test or physical test including, but not limited to, an infrared light test of his or her breath for the purpose of determining the alcoholic content of his or her blood or breath if the person is lawfully arrested for any offense allegedly committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic beverages. The chemical or physical breath test must be incidental to a lawful arrest and administered at the request of a law enforcement officer who has reasonable cause to believe such person was driving or was in actual physical control of the motor vehicle within this state while under the influence of alcoholic beverages. The administration of a breath test does not preclude the administration of another type of test. The person shall be told that his or her failure to submit to any lawful test of his or her breath will result in the suspension of the person’s privilege to operate a motor vehicle for a period of 1 year for a first refusal, or for a period of 18 months if the driving privilege of such person has been previously suspended as a result of a refusal to submit to such a test or tests, and shall also be told that if he or she refuses to submit to a lawful test of his or her breath and his or her driving privilege has been previously suspended for a pri- or refusal to submit to a lawful test of his or her breath, urine, or blood, he or she commits a misdemeanor in addition to any other penalties....
 

 Section 322.2615 then provides:
 

 (l)(a) A law enforcement officer or correctional officer shall, on behalf of the department, suspend the driving privilege of ... a person who has refused to submit to a urine test or a test of his or her breath-alcohol or blood-alcohol level....
 

 (b) The suspension under paragraph (a) shall be pursuant to, and the notice of suspension shall inform the driver of, the following:
 

 (l)(a) The driver refused to submit to a lawful breath, blood, or urine test and his or her driving privilege is suspended for a period of 1 year for a first refusal or for a period of 18 months if his or her driving privilege has been previously suspended as a result of a refusal to submit to such a test....
 

 An officer who has suspended the driver’s license under this statute must forward appropriate documents supporting the suspension to the Department. At that point, the driver may seek an informal or formal review hearing. Under section 322.2615(7)(b), a formal review hearing requires the hearing officer to consider
 

 1. Whether the law enforcement officer had probable cause to believe that the person whose license was suspended was driving or in actual physical control of a motor vehicle in this state while under the influence of alcoholic beverages or chemical or controlled substances.
 

 2. Whether the person whose license was suspended refused to submit to any such test after being requested to do so
 
 *709
 
 by a law enforcement officer or correctional officer.
 

 3. Whether the person whose license was suspended was told that if he or she refused to submit to such test his or her privilege to operate a motor vehicle would be suspended for a period of 1 year or, in the case of a second or subsequent refusal, for a period of 18 months.
 

 If the hearing officer determines that these three criteria are met, the Department “shall” sustain the suspension. § 322.2616(8)(a).
 

 Ms. Nader and Ms. Mclndoe were advised of the implied consent provisions and were asked to submit to a breath-alcohol test. The only possible anomaly in the warnings provided to them was the fact that instead of being asked to submit to a breath-alcohol test, the documents supporting the suspension suggest they may have been asked to submit to a “breath, blood, or urine” test. We cannot agree with the reasoning in
 
 Clark
 
 that this type of language in the standard report form establishes that a driver was or might have been misled into thinking that a more invasive test may be required. The use of “or” plainly suggests the driver has a choice of one of the three tests and is free to choose the breath test if the driver prefers the least invasive method.
 
 See, e.g., Sparkman v. McClure,
 
 498 So.2d 892, 895 (Fla.1986) (explaining that the use of the word “or” is generally construed in the disjunctive and, when used in a statute or rule, normally indicates that alternatives were intended). Notably, there is no evidence in these cases that either driver was confused, that they requested clarification, or that they asked specifically for a breath test and were denied that request.
 

 Sections 316.1932(l)(a)(l)(a) and 322.2615 plainly require the suspension of a driver’s license when the driver refuses to submit to a lawful request for a breath-alcohol test. Ms. Nader and Ms. Mclndoe were each asked to submit to a lawful breath-alcohol test, although they were perhaps provided with the option of two alternatives to that test. Both refused to submit to any test. The Department obeyed the clear statutory language.
 

 While it was prudent, if not essential, for the circuit court in this case to follow the Fourth District’s opinion in
 
 Clark,
 
 we conclude that decision was incorrectly decided. As explained in the next section, we exercise our certiorari jurisdiction to quash the circuit court’s reluctant opinions and require the circuit court to apply the plain language of the relevant statutes on remand.
 

 III.
 

 These two certiorari proceedings present a scenario that recurs occasionally with significant consequences. A district court is sometimes asked to review by certiorari a circuit court opinion that in turn reviewed an administrative order involving a question of first impression. This review is often called a “second-tier” certiorari proceeding and is similar in scope to true common law certiorari review.
 
 Fla. Power & Light Co. v. City of Dania,
 
 761 So.2d 1089, 1092 (Fla.2000). If the district court decides to deny common law certiorari in a written decision, it often comments on both the limited standard of review in common law second-tier certiorari and the merits of the underlying issue. In these circumstances, the merits may be somewhat debatable and the precedential value of that discussion may be limited.
 
 See, e.g., Maddox v. State,
 
 862 So.2d 783, 785 n. 1 (Fla. 2d DCA 2003). That decision, however, becomes the only pronouncement in Florida on the subject.
 

 Circuit court judges are aware of the requirement that they obey controlling
 
 *710
 
 precedent from other districts even if they disagree with the precedent.
 
 See Pardo v. State,
 
 596 So.2d 665, 666 (Fla.1992). Accordingly, the circuit court judges proceed to follow the debatable decision. The only method for a party to obtain district court review of such rulings is by a petition for writ of common law certiorari. Such cases are “second-tier” certiorari proceedings, in which the district court is limited to determining whether the circuit court afforded the parties procedural due process and whether it “applied the correct law” or “departed from the essential requirements of the law.”
 
 Dep’t of Highway Safety & Motor Vehicles v. Stenmark,
 
 941 So.2d 1247, 1249 (Fla. 2d DCA 2006);
 
 see also Dep’t of Highway Safety & Motor Vehicles v. Roberts,
 
 938 So.2d 513 (Fla. 5th DCA 2006).
 

 In this case, for example, the circuit court diligently, albeit with some objection, applied
 
 Clark
 
 as the only controlling authority. It is a little disingenuous, then, to suggest that the circuit court “departed from the essential requirements of the law” when it followed the only precedent.
 
 [2]
 

 Our constitutional system of review in Florida has been built on a foundation that encourages debate among the district courts and a screening of cases so that direct conflict between the districts on dis-positive issues is usually required for the supreme court to resolve an issue. This system is difficult to employ in the narrow context described in this case. If we hold that the trial court did not depart from the essential requirements of the law by following the Fourth District, then any discussion we may undertake arguing that the Fourth District’s opinion is incorrect becomes mere dicta. It creates no conflict that would authorize supreme court review, and it probably creates no binding precedent allowing the next circuit judge in this district to disregard the
 
 Clark
 
 decision. On the other hand, we are loath to suggest that a circuit court may reject what appears to be controlling precedent in this context based upon its own interpretation of a statute or constitutional provision.
 

 The ramifications of such a situation can be dramatic. As this case demonstrates, the “breath, blood, or urine” language is contained in a standard form used in Hills-borough County, and probably elsewhere, since at least 2003. Unless the circuit court is free to disregard
 
 Clark,
 
 every driver’s license suspension based on a refusal to submit to a breath test in which a similar form is used would be overturned by the circuit courts based solely upon the decision in
 
 Clark
 
 denying certiorari relief. There would be no multi-district review and no ability for the other district courts to generate conflicting decisions.
 

 As explained in
 
 Allstate Insurance Co. v. Kaklamanos,
 
 843 So.2d 885, 889 (Fla.2003), second-tier certiorari should not be used simply to grant a sec
 
 *711
 
 ond appeal, but should be reserved for those situations when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.
 
 See also Ivey v. Allstate Ins. Co.,
 
 774 So.2d 679, 682 (Fla.2000);
 
 Haines City Cmty. Dev. v. Heggs,
 
 658 So.2d 523, 528 (Fla. 1995). “Clearly established law,” however, can derive from a variety of legal sources, including case law, rules of court, statutes, and constitutional law.
 
 Kaklamanos,
 
 843 So.2d at 890. We conclude that a district court is authorized to find clearly established law on the face of a statute even when another district court has interpreted the statute to require a different outcome in a published opinion. Moreover, a district court is then authorized to grant certiorari relief and quash a circuit court decision that obeyed the controlling precedent and disobeyed the plain language of the statute. We therefore grant the Department’s petition for writ of certiorari and quash the circuit court’s opinion.
 

 Although it is very likely that our decision expressly and directly conflicts with
 
 Clark,
 
 we certify two questions of great public importance to the supreme court:
 

 1. DOES A LAW ENFORCEMENT OFFICER’S REQUEST THAT A DRIVER SUBMIT TO A BREATH, BLOOD, OR URINE TEST, UNDER CIRCUMSTANCES IN WHICH THE BREATH-ALCOHOL TEST IS THE ONLY REQUIRED TEST, VIOLATE THE IMPLIED CONSENT PROVISIONS OF SECTION 316.1932(1)(A)(1)(A) SUCH THAT THE DEPARTMENT MAY NOT SUSPEND THE DRIVER’S LICENSE FOR REFUSING TO TAKE ANY TEST?
 

 2. MAY A DISTRICT COURT GRANT COMMON LAW CERTIORA-RI RELIEF FROM A CIRCUIT COURT’S OPINION REVIEWING AN ADMINISTRATIVE ORDER WHEN THE CIRCUIT COURT APPLIED PRECEDENT FROM ANOTHER DISTRICT COURT BUT THE REVIEWING DISTRICT COURT CONCLUDES THAT THE PRECEDENT MISINTERPRETS CLEARLY ESTABLISHED STATUTORY LAW?
 

 Petitions granted; circuit court opinion quashed; questions certified.
 

 CASANUEVA and WALLACE, JJ., Concur.
 

 [1]
 

 .
 
 See
 
 § 316.1932, Fla. Stat. (2007).
 

 [2]
 

 . A similar dilemma, but not in an administrative context, was touched upon in
 
 State v. Veilleux,
 
 859 So.2d 1224 (Fla. 2d DCA 2003), but avoided. In
 
 Veilleux,
 
 the majority agreed with a First District opinion,
 
 Dixon v. State,
 
 812 So.2d 595 (Fla. 1st DCA 2002),
 
 disapproved in Maddox v. State,
 
 923 So.2d 442 (Fla.2006), and thus approved the circuit court's decision to apply
 
 Dixon
 
 as the controlling and correct principle of law. Although the dissent argued that certiorari was appropriate notwithstanding the circuit court’s proper application of
 
 Dixon
 
 based upon clearly established principles of constitutional law,
 
 id.
 
 at 1231-32 (Altenbernd, J., dissenting), the majority rejected the constitutional analysis employed by the dissent,
 
 id.
 
 at 1228-29. The majority simply denied certiorari and thus avoided determining whether certiorari review was appropriate where the circuit court applies controlling precedent from another district but the application of that precedent violates clearly established statutory or constitutional law.