923 So.2d 442 (2006)
Robert E. MADDOX, Petitioner,
v.
STATE of Florida, Respondent.
No. SC03-2110.
Supreme Court of Florida.
January 12, 2006.
Rehearing Denied March 2, 2006.
*443 James Marion Moorman, Public Defender and Anthony c. Musto, Special Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Robert J. Krauss, Chief-Assistant Attorney General, Bureau Chief, Tampa Criminal Appeals and Donna S. Koch, Assistant Attorney General, Tampa, FL, for Respondent.
PER CURIAM.
We have for review the decision in Maddox v. State, 862 So.2d 783 (Fla. 2d DCA 2003), which certified conflict with the decision in Dixon v. State, 812 So.2d 595 (Fla. 1st DCA 2002). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.[1] *444 For the reasons more fully expressed below, we disapprove the decision of the First District Court of Appeal in Dixon, and approve the result reached by the Second District Court of Appeal in Maddox.

Facts
The instant action arises from the Second District Court of Appeal's decision in Maddox v. State, 862 So.2d 783 (Fla. 2d DCA 2003), affirming the circuit court's conviction of the petitioner (Maddox) and certifying conflict with the First District Court of Appeal's decision in Dixon v. State, 812 So.2d 595 (Fla. 1st DCA 2002). The facts of the instant case, summarized in Judge Davis's opinion below, are as follows:
A Polk County Deputy Sheriff stopped Maddox for an improper lane change. Upon being asked for his driver's license and proof of insurance, Maddox advised the deputy that he did not have his license or proof of insurance with him. The deputy then asked for his name and date of birth, in response to which Maddox said his name was Nathaniel Lewis Maddox and his date of birth was November 1, 1980. Based on this information, the deputy issued two citations in the name of Nathaniel Lewis Maddox  one for improper lane change and the other for failure to produce proof of insurance. When Maddox was hesitant to sign the citations, the deputy advised that failure to sign was a criminal offense. Maddox then signed the citations.
During the traffic stop, a second deputy arrived on the scene. The owner of the car, who had been riding in the front passenger seat, gave permission for the deputies to search the vehicle. During the search, the second deputy found an identification card that identified Maddox as Robert Edwin Maddox. A license check for Robert Edwin Maddox showed that his driver's license was suspended. The deputy retained possession of the two traffic citations issued to Nathaniel Maddox and issued a citation to Maddox charging him with driving while his licensed was suspended. Maddox initially refused to sign this citation but agreed to after the deputy issued him a subsequent citation for refusing to sign a citation. Later, while in custody, Maddox volunteered that Nathaniel Maddox was his brother. Accordingly, Maddox was charged with two counts of forgery for signing the citations issued in the name of Nathaniel and two counts of uttering a forged instrument.
Maddox went to trial on the forgery and uttering counts, as well as on one count of giving false information to a police officer and one count of driving while license suspended. He was found guilty as charged.
Maddox, 862 So.2d at 783-84. Maddox appealed his convictions to the Second District Court of Appeal.
The Second District affirmed Maddox's convictions and sentences without comment but wrote to specifically address his contention that the forged traffic citations were inadmissible pursuant to section 316.650(9) of the Florida Statutes (2001). See id. at 783. The district court determined that the trial court did not err in allowing the forged traffic citations into evidence. See id. at 784. In support of its holding, the district court noted that "the purpose of the statute is to protect the person to whom the citation is issued." Id. The district court stated that the person to whom the citations were actually issued in the present case, Nathaniel Maddox (Maddox's brother), was not on trial for either of the infractions underlying those forged traffic citations, nor was Maddox himself on trial for those violations. See id. Further, *445 the district court found that when the deputy issuing the citation learned that Maddox was not Nathaniel Maddox the deputy "withdrew the charges ... and retained the documents as evidence of the criminal offense of forgery." Id. Therefore, the district court determined that the charges were no longer pending against anyone and, as a result, the documents relating to those charges "were not `citations' as contemplated by the statute, but rather were documentary evidence of Maddox's criminal conduct." Id. Accordingly, the district court held that section 316.650(9) of the Florida Statutes did not apply to the present case and certified conflict with the First District's decision in Dixon. See Maddox, 862 So.2d at 784.

Analysis
In analyzing the conflict that exists between the decision here and that of the First District in Dixon, it is helpful to consider a brief summary of the material facts presented to the First District in Dixon. The factual predicate in Dixon was essentially identical to that in the present case:
Upon being stopped by a police officer following the commission of several traffic infractions, [Dixon] provided a false name to the officer. That name was placed on the traffic citation, which [Dixon] signed using the false name. When it was learned that [Dixon] gave a false name, he was charged with forgery under section 831.01 and driving without a valid driver's license.
812 So.2d at 595-96. However, contrary to the decision of the district court in the present case, the First District in Dixon determined that the language of section 316.650(9) of the Florida Statutes (2000),[2] was unambiguous and for that reason was not subject to any judicial interpretation or construction whatsoever. See id. at 596. Therefore, the district court in Dixon simply determined without elaboration that the language contained in section 316.650(9)  that "traffic citation[s] `shall not be admissible evidence in any trial'"  required the exclusion of forged citations in the State's prosecution for forgery. Id. (quoting § 316.350(9), Fla. Stat. (2000)).
Maddox urges this Court to approve and adopt the First District's approach and decision in Dixon and hold that the First District appropriately applied section 316.650(9) of the Florida Statutes (2000), when it concluded that the language of the section is unambiguous and, therefore, not subject to judicial interpretation. Maddox continues that the plain meaning of the particular section makes it absolutely clear that citations simply should not be admissible in any trial under any circumstance. The outcome of this case necessarily turns on the application of principles of statutory construction with regard to section 316.650(9) of the Florida Statutes. Turning to these principles, we note that we have previously held that "[i]t is a fundamental principle of statutory construction that where a statute is plain and unambiguous there is no occasion for judicial interpretation." Golf Channel v. Jenkins, 752 So.2d 561, 564 (Fla.2000) (alteration in the original) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 454 (Fla.1992)). However, this Court has
also stated that related statutory provisions should be read together to determine legislative intent, so that "if from a view of the whole law, or from other laws in pari materia the evident intent is *446 different from the literal import of the terms employed to express it in a particular part of the law, that intent should prevail, for that, in fact is the will of the Legislature."
Id. (quoting Forsythe, 604 So.2d at 454); see also McGhee v. Volusia County, 679 So.2d 729, 730 n. 1 (Fla.1996) ("The doctrine of in pari materia requires the courts to construe related statutes together so that they illuminate each other and are harmonized."). Moreover, "a literal interpretation of the language of a statute need not be given when to do so would lead to an unreasonable or ridiculous conclusion." Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984).
The statute at issue here is found within chapter 316 of the Florida Statutes entitled "Florida Uniform Traffic Control Law." § 316.001, Fla. Stat. (2001) (emphasis supplied). The stated purpose of this chapter of the Florida Statutes was outlined by the Legislature in section 316.002:
It is the legislative intent in the adoption of this chapter to make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities.
§ 316.002, Fla. Stat. (2001) (emphasis supplied). Additionally, when section 316.650 was originally enacted by the Legislature in 1971, the description of the bill expressly stated that it was
AN ACT relating to the regulation of traffic on highways; ... to provide for a uniform traffic citation; requiring its statewide use; prescribing duties of traffic officers and chief administrative officers in connection with the issuance, distribution and maintenance of records....
Ch. 71-321, preamble, at 1501, Laws of Fla. (emphasis supplied). When section 316.650 is read in the context within the chapter in which it is found, its related statutory provisions, and the legislative history surrounding its passage, it is clear that a strict literal reading of the phrase "any trial," as suggested by Maddox and endorsed by the First District in Dixon, would inappropriately extend the effects of this statutory provision far beyond the scope of that which was intended by the Legislature when it originally enacted this section. It would extend far beyond cases in which the operation, maintenance or use of a vehicle was an issue in controversy. In addition, we agree with Second District that the purpose of this statutory provision is to protect the person to whom the citation is issued which in this case was Nathaniel Maddox, the appellant's brother, who is not even a party in this matter. See Maddox, 862 So.2d at 784. We further conclude that the statute was intended to apply only in connection with matters directly associated with the substance of the charge upon which the citation is issued  a traffic infraction.
Another principle of statutory construction that compels our conclusion that the Second District appropriately determined that section 316.650 is inapplicable to the instant matter is the rule which recognizes that "[t]he legislative use of different terms in different portions of the same statute is strong evidence that different meanings were intended." State v. Mark Marks, P.A., 698 So.2d 533, 541 (Fla.1997) (quoting Dep't of Prof'l Regulation v. Durrani, 455 So.2d 515, 518 (Fla. 1st DCA 1984)); see also Beach v. Great W. Bank, 692 So.2d 146, 152 (Fla.1997) (quoting Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So.2d 911, 914 (Fla.1995) ("When the legislature has used a term... in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded.")). Tellingly, in section *447 316.066(4) of the Florida Statutes (2001), located in the same chapter as the statutory provision at issue in this case, the Legislature enacted a provision that mandates that neither a crash report nor a statement made in connection with such a report "shall be used as evidence in any trial, civil or criminal." § 316.066(4), Fla. Stat. (2001) (emphasis supplied). The Legislature's use of the language "civil or criminal" in section 316.066(4) to modify the phrase "any trial," and the exclusion of those same modifiers in the statutory provision under review here, compels us to conclude that the Legislature intended different meanings of the term "any trial" in each statute. If the Legislature had intended section 316.650(9) to include "any trial, civil or criminal," then the Legislature would have included that language within its enactment, as it did in section 316.066(4). However, the Legislature chose not to include these modifying terms in section 316.650(9), and we conclude that it would not be proper for us to imply this missing language where the Legislature has obviously intended that it be omitted. See State v. Bradford, 787 So.2d 811, 819 (Fla.2001); Beach, 692 So.2d at 152 (quoting Leisure Resorts, Inc., 654 So.2d at 914). Based on the foregoing analysis, we conclude that the Legislature intended that the phrase "any trial" in section 316.650(9) should not be interpreted to mean "any trial, civil or criminal," but instead that the phrase "any trial" in section 316.650(9), consistent with the statutory chapter in which that statutory provision is found, was intended to refer to the use of traffic citations in proceedings in which the manner or method of the operation, maintenance or use of a vehicle is the issue in controversy.
Moreover, contrary to the dictates of this Court in Auld, if we were to agree with the view of the dissent and approve of the First District's interpretation of the phrase "any trial" and conclude that this phrase was intended to absolutely encompass all proceedings in a court of law, we would in essence be sanctioning a construction of this statutory provision that would lead to "unreasonable or ridiculous" results. Auld, 450 So.2d at 219. An example of the absurd results that could follow if we were to approve the First District's decision in Dixon was outlined by Chief Judge Altenbernd in his dissenting opinion in State v. Veilleux, 859 So.2d 1224 (Fla. 2d DCA 2003). He reasoned:
Hypothetically, if Mr. Veilleux had been charged with first-degree murder and he wished to introduce a traffic citation as alibi evidence to establish that he was receiving a traffic ticket in another county at the time of the murder, it is inconceivable to me that a court could constitutionally prohibit him from introducing this document as evidence. Yet, if read literally, this statute would prevent anyone from introducing the traffic citation in any court proceeding.
Id. at 1231 (Altenbernd, C.J., dissenting) (emphasis supplied). In a similar manner, under the dissenting opinion's view, a citation found at the scene of the murder of a police officer would be inadmissible to show the last person having contact with the officer when the substance of the particular citation was in no way in controversy.
We find further support for our conclusion in this matter when recognizing that the First District's interpretation of section 316.650(9) essentially eradicates all prosecutions for forgery of a traffic citation. Under Florida's statutory scheme, to obtain a conviction for forgery the State must demonstrate that the alleged document forged falls within the classes of documents specified in section 831.01 of the Florida Statutes (2005). See State v. Escobedo, 404 So.2d 760, 764 (Fla. 3d DCA *448 1981) ("Our forgery statute ... makes whoever `forges' documents of specified classes `with intent to injure or defraud any person' liable to a maximum of [five] years' imprisonment.") (quoting Green v. State, 76 So.2d 645, 646 (Fla.1954)). To accomplish this, the State must specifically prove that the allegedly forged document is in fact a "public document" and is therefore actionable under the statute. Such could never be accomplished in the context of the instant matter if the traffic citation could not be admitted into evidence. The dissent expresses concern that allowing traffic citations into evidence could be unduly prejudicial to defendants due to the potential that the citation may contain "unflattering, legally irrelevant information recorded on the citation," and that a citation will "invariably ... proclaim the officer's judgment that the defendant committed an offense other than forgery." Dissenting op. at 454. However, the dissent's concerns could be alleviated by merely redacting the portions of the citation that do not relate to the forgery charge and that could potentially prejudice a defendant, a practice that is used by trial courts throughout Florida when a critical piece of probative evidence also contains prejudicial information. When the First District's construction of section 316.650(9) is considered in light of the above, it is clear to us that the Legislature surely did not intend for the phrase "any trial" to be construed so literally to exclude the use of traffic citations in all judicial proceedings  including proceedings other than those involving traffic control and related motor vehicle operation matters such as civil litigation flowing from motor vehicle operation.
In summary, although the strict meaning of the words in the abstract employed by the Legislature when it drafted section 316.650(9) may admittedly support the outcome of the First District's opinion in Dixon v. State, 812 So.2d 595 (Fla. 1st DCA 2002), such a sterile literal interpretation should not be adhered to when it would lead to absurd results. See Parker v. State, 406 So.2d 1089, 1091 (Fla.1981). When section 316.650 is read in the context in which it is found and in conjunction with related statutory provisions, the reasonable construction of this statutory provision is that the Legislature intended only to exclude traffic citations in a more limited fashion in matters with issues related to the operation, maintenance or use of the motor vehicle. To hold otherwise would expand the scope of this statute unreasonably and lead to absurd results. Accordingly, we disapprove the decision of the First District Court of Appeal in Dixon v. State, 812 So.2d 595 (Fla. 1st DCA 2002), and approve the result reached by the Second District Court of Appeal in Maddox v. State, 862 So.2d 783 (Fla. 2d DCA 2003) for the reasons stated herein.
It is so ordered.
WELLS, ANSTEAD, LEWIS, and BELL, JJ., concur.
CANTERO, J., dissents with an opinion, in which PARIENTE, C.J., and QUINCE, J., concur.
CANTERO, J., dissenting.
I would apply the plain meaning of the statute, which prohibits the introduction of traffic citations "in any trial." Contrary to the majority, I agree with the First District Court of Appeal's conclusion in Dixon v. State, 812 So.2d 595 (Fla. 1st DCA 2002), that the statute at issue is unambiguous and therefore must be applied as written. I do not believe that we can, or should, circumvent the statute's plain language. Its directive that traffic "citations shall not be admissible evidence in any trial," § 316.650(9), Fla. Stat. (2001), is *449 simple and clear. "Any trial" means literally any trial.
The majority instead interprets the statute as excluding citations from evidence only in trials "related to the operation, maintenance or use of the motor vehicle." Majority op. at 448. In other words, according to the majority, "any trial" must mean "any traffic-related trial." I do not agree that we must construe the statute in such a way to avoid an absurd result. I am not prepared to declare it absurd for the Legislature to make citations inadmissible in all cases. As I explain below, the Legislature could have a rational basis for excluding them, such as preventing undue prejudice to defendants. Because I believe the plain meaning of section 316.650(9) prohibits the introduction of traffic citations in any trial, and that such a reading does not lead to an absurd result, I must dissent.
In the following discussion, I will (A) analyze the plain meaning of the statute, (B) summarize the absurdity doctrine, and (C) explain why the plain meaning of the statute cannot be considered absurd.

A. Plain Meaning
Florida is one of "[m]any states [that] have shown great reluctance to admit traffic citations into evidence." Hadley v. Maxwell, 144 Wash.2d 306, 27 P.3d 600, 604 (2001) (citing Martin v. Hackworth, 127 Idaho 68, 896 P.2d 976, 978 (1995), and Ruthardt v. Tennant, 252 La. 1041, 215 So.2d 805, 808 (1968)). Some states have made citations inadmissible where they carry the greatest risk of prejudice, such as in civil trials arising from the cited traffic offense. See, e.g., Ingrum v. Tucson Yellow Cab Co., 131 Ariz. 523, 642 P.2d 868, 872 (Ct.App.1981); Townsend v. Brantley, 163 Ga.App. 899, 296 S.E.2d 186, 187 (1982); Ferreira v. Gen. Motors Corp., 4 Haw.App. 12, 657 P.2d 1066, 1069 (1983); Hood v. Oakley, 519 So.2d 1236, 1239 (Miss.1988); Cotton v. Pyle, 400 S.W.2d 72, 75 (Mo.1966); Frias v. Valle, 101 Nev. 219, 698 P.2d 875, 876 (1985); Isaacs v. Plains Transp. Co., 367 S.W.2d 152, 153 (Tex. 1963). Other states have rejected "a rule of blanket exclusion" in favor of a case-by-case approach. Getchell v. Lodge, 65 P.3d 50, 58 (Alaska 2003).
Florida has done the opposite. Until recently, our traffic citation statute broadly provided that "citations shall not be admissible evidence in any trial." § 316.650(9), Fla. Stat. (2001).[3] The question in this case is whether "any trial" really means any trial.
The first step in interpreting the statute is to scrutinize its text. As we have long held, "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)). This rule respects the statutory text as the most reliable and authoritative expression of legislative intent. Therefore, "[e]ven where a court is convinced that the legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity." St. Petersburg Bank & *450 Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla.1982) (quoting Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693, 694 (1918)).
Section 316.650(9) is as clear, definite, and unambiguous as statutory language gets. It states firmly and without exception that citations "shall not be admissible evidence in any trial." § 316.650(9), Fla. Stat. (2001) (emphases added). That, of course, includes forgery trials. The First District concluded as much, holding that "section 316.650(9) unambiguously provides that traffic citations are not admissible in any trial" and "contains no exceptions to this clear and unambiguous prohibition." Dixon, 812 So.2d at 595-96. Before this case, two separate panels of the Second District had reached the same conclusion. See State v. Veilleux, 859 So.2d 1224 (Fla. 2d DCA 2003), review denied, 880 So.2d 1212 (Fla.2004); State v. Martinez, 870 So.2d 18 (Fla. 2d DCA 2003).[4]
The majority, on the other hand, construes the words "in any trial" as referring only to "proceedings in which the manner or method of the operation, maintenance or use of a vehicle is the issue in controversy." Majority op. at 447. The majority attributes this narrow construction to two contextual clues: the stated purpose of Florida's traffic laws, and the slightly different language used to prohibit the admissibility of crash reports. I cannot agree that either factor is sufficient to allow us to infer a legislative intent that "any trial" in section 316.650(9) means something less than that. I address each in turn.
First, the majority notes that section 316.650(9) appears in the Florida Uniform Traffic Control Law, whose opening provision expresses a "legislative intent ... to make uniform traffic laws to apply throughout the state," § 316.002, Fla. Stat. (2001), and whose original preamble focused on "the regulation of traffic on highways." Ch. 71-321, Laws of Fla. Highlighting the recurring word "traffic," the majority reasons that section 316.650(9) must have been intended to exclude citations only in traffic-related trials. This reasoning, however, is undermined by the crash report provision, contained in the same Uniform Traffic Control Law and furthering the same legislative intent. See § 316.066(4), Fla. Stat. (2001). As the majority acknowledges, that provision excludes crash reports even in trials unrelated to motor vehicle operation. It provides as follows:
Except as specified in this subsection, each crash report made by a person involved in a crash and any statement made by such person to a law enforcement officer for the purpose of completing a crash report required by this section shall be without prejudice to the individual so reporting. No such report or statement shall be used as evidence in any trial, civil or criminal.

Id. (emphasis added).
Thus, notwithstanding the Legislature's stated goal of making "uniform traffic laws," it prohibited the introduction of crash reports in any trial, even those unrelated to traffic violations (specifically including civil or criminal trials). The Legislature obviously felt that the uniform exclusion of such reports was compatible with its creation of uniform traffic laws. Therefore, the exclusion of traffic citations from evidence in any trial must also be compatible with the general goal of *451 creating uniform traffic laws, as well as with the more specific one of "provid[ing] for a uniform traffic citation; requiring its statewide use." Ch. 71-321, Laws of Fla.
The majority nevertheless concludes that the crash report provision supports its interpretation because the provision addresses admissibility in slightly different language than the provision at issue (using "any trial, civil or criminal" instead of simply "any trial"). The majority interprets the modifier "civil or criminal" as indicating that crash reports must be excluded from literally "any trial," whereas the omission of that modifier from the traffic citation provision indicates that citations need only be excluded from traffic-related trials. The majority claims that to conclude otherwise would be "to imply this missing language where the Legislature has obviously intended that it be omitted." Majority op. at 447.
I disagree that such a conclusion necessarily follows. One need not imply missing language to interpret the phrase "any trial" as encompassing all trials, including those unrelated to motor vehicle operation. The phrase is already as expansive as possible. Adding the modifier "civil or criminal," as the Legislature did in the crash report provision, would serve only to emphasizeor perhaps even restrictthe provision's scope. In fact, the Department of Highway Safety and Motor Vehicles has argued that the modifier "civil or criminal" renders the crash report provision inapplicable to administrative proceedings, such as license suspension hearings, that are neither civil nor criminal. This case does not require us to address that argument, which the district courts have consistently rejected. See Dep't of Highway Safety & Motor Vehicles v. Corbin, 527 So.2d 868, 872 (Fla. 1st DCA 1988) (holding that "to narrowly interpret the accident report privilege as being applicable only in criminal and civil `trials,' in the literal sense of these terms, but not in administrative proceedings, would be to substantially diminish its effectiveness"); see also Dep't of Highway Safety & Motor Vehicles v. Perry, 702 So.2d 294, 295 (Fla. 5th DCA 1997) (holding that "the Corbin case is controlling" and therefore the crash report "statute must also be applied to administrative proceedings"); Nelson v. State Dep't of Highway Safety & Motor Vehicles, 757 So.2d 1264, 1265 (Fla. 3d DCA 2000) (citing Perry for the proposition that the crash report provision "is applicable to administrative proceedings"). Suffice it for these purposes to say that the modifier "civil or criminal" does not expand the scope of the phrase "any trial."
The majority itself adds language to section 316.650(9) to support its narrower construction, qualifying the phrase "in any trial" with the phrase, "in which the manner or method of the operation, maintenance or use of a vehicle is the issue in controversy." Majority op. at 447. According to the majority, the absence of the phrase "civil or criminal" in section 316.650(9) implicitly limits the provision to traffic-related trials. However, the civil/criminal distinction is not the same as the traffic/non-traffic distinction. A traffic offense can result in either civil or criminal proceedings. See, e.g., § 318.12, Fla. Stat. (2001) (expressing "the legislative intent... to decriminalize certain violations" of the Uniform Traffic Control Law). Also, as I mentioned, some traffic offenses can result in administrative proceedings, which are neither civil nor criminal. Whether section 316.650(9) applies to civil or criminal trials is thus an entirely separate question from whether it applies to traffic-related trials.
Based on this analysis, I continue to believe that the plain meaning of section *452 316.650(9) is that traffic citations may not be admitted as evidence in any trial, even a forgery trial. Nothing in the statutory context casts doubt on this plain meaning.

B. The Absurdity Doctrine
As the majority notes, and I agree, we will deviate from a statute's plain language when necessary to avoid an absurd result. As we explained many years ago, "no literal interpretation should be given that lends to an unreasonable or ridiculous conclusion." State v. Sullivan, 95 Fla. 191, 116 So. 255, 261 (1928); see also State v. Burris, 875 So.2d 408, 414 (Fla.2004) (stating, more recently, that "[a] statute's plain and ordinary meaning controls only if it does not lead to an unreasonable result"). However, to prevent the appearance that we are merely substituting our own judgment for the Legislature's, we must invoke the exception only when absolutely necessarythat is, when otherwise the result truly would be absurd or patently unreasonable.
This canon of statutory construction has been one of the "fixed points" in American law, John F. Manning, The Absurdity Doctrine, 116 Harv. L.Rev. 2387, 2389 (2003), and has guided this Court's jurisprudence from the very beginning. See White v. Camp, 1 Fla. 94, 109 (1846) (Baltzell, J., dissenting) (stating, in the first volume of the Florida Reports, that "the reason and intention of the law giver will control the strict letter of the law, when the latter would lead to palpable injustice, contradiction and absurdity") (quoting Plowden's digest of English cases from the sixteenth century).
Yet the absurdity exception to the plain meaning rule is intended to be narrow. The Supreme Court, for example, "rarely invokes such a test to override unambiguous legislation." Barnhart v. Sigmon Coal Co., 534 U.S. 438, 459, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). In fact, the Court has come "to connect its absurdity analysis to the more forgiving standards of rationality review," Manning, supra, at 2452, meaning that it will enforce a statute's plain meaning as long as it can hypothesize a rational basis to support the textual policy. Id. at 2452 n. 244 (citing examples).
The absurdity doctrine should be reserved for cases where applying the plain meaning would border on irrationality. Only then can we be sure that a textual interpretation would yield "an absurd result totally incongruous with the will of the people." Plante v. Smathers, 372 So.2d 933, 937 (Fla.1979). If expanded beyond rational basis review, the absurdity exception would threaten to undermine the separation of powers by allowing judges to substitute their own views of wise public policy for the compromises struck by legislators. As one scholar recently explained:
The legislative process is untidy, and the particular wording of a statute may have been, for unknowable reasons, essential to its passage. Thus, rather than identifying genuine legislative intent, application of the absurdity doctrine to disturb a clear statutory text risks displacing whatever bargain legislators actually reached through the complex and path-dependent legislative process.
Manning, supra, at 2486. In other words, there is a fine line between a judicious policy and a judicially imposed one. Unless we can say with absolute confidence that no reasonable legislature would have intended for the statute to carry its plain meaning, we should "presume that [our] legislature says in a statute what it means and means in a statute what it says there." BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (plurality opinion) (quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). The exception to the plain *453 meaning rule should not be used to avoid an unintended result, only an absurd or patently unreasonable one.

C. Excluding Citations from Forgery Trials is not Truly Absurd
The majority claims it would be absurd to prohibit the admission of traffic citations as evidence of forgery. I am not so sure. While citations certainly have greater probative value in forgery trials than in ordinary traffic trials, they still pose a substantial risk of prejudice to the defendant. That the Legislature would decide that the costs of admitting citations outweigh the benefits, even in forgery trials, cannot be considered "unreasonable or ridiculous." Sullivan, 116 So. at 261. To explain this point, I first examine why the Legislature has excluded traffic citations in ordinary traffic trials. Then I demonstrate that the same rationales may justify their exclusion in forgery trials.
All traffic citations have potential value as evidence. They contain a contemporaneous record of what the officer observed, as well as a signature confirming the defendant's presence at the scene. Therefore, they could verify, refute, or supplement the testimony at trial. Also, they could be admitted as business records even without the officer's testimony, provided that a records custodian could verify their authenticity and that their admission would not violate the right to confrontation. See § 90.803(6), Fla. Stat. (2001); see also Veilleux, 859 So.2d at 1230 (Alternbernd, C.J., dissenting) (suggesting that, in the absence of other statutory restrictions, citations could be introduced as business records).
The Legislature, however, has prohibited citations from playing a substantive role by prohibiting their admission as evidence. Instead, they serve three procedural purposes. First, they document the traffic encounter. The statute requires citations to be issued in quintuplicate, § 316.650(1)(a), Fla. Stat. (2001), and meticulously explains where the copies must be sent and how long they must be kept. Id. § 316.650(3)-(8). Second, they give the accused notice to appear. Id. § 316.650(1)(a). The statute provides that the accused "must sign and accept a citation indicating a promise to appear." Id. § 318.14(2). Finally, they can serve as charging documents before the traffic court. See Fla. R. Traf. Ct. 6.165(a); Hurley v. State, 322 So.2d 506 (Fla.1975).
While the Legislature has not stated its reasons for relegating citations to a purely procedural role, I can think of three. First, excluding citations from evidence ensures that the officer who witnessed the alleged traffic offense will actually appear in court and offer firsthand testimony, rather than defer to what is written on the ticket. As a result, the defendant can confront the officer and expose any weaknesses in the testimony. The theory behind this policy is that factfinders can assess the credibility of firsthand, confrontational testimony more accurately than they can assess the credibility of an officer's written report. See Sheryl L. Musgrove & David W. Gross, Use of a Traffic Citation in a Subsequent Related Civil Proceeding, 33 Idaho L.Rev. 135, 144-45 (1996) (warning that "the jury may give undue credence to the decision of the investigating officer to issue the citation").
Another reason for excluding citations from evidence is to ensure that officers will testify only about the facts they witnessed, rather than their legal relevance. As the Idaho Supreme Court explained in holding that citations may not be admitted as evidence in traffic-related civil trials, "[a] citation constitutes a police officer's conclusion that a driver has violated a statute or an *454 ordinance. While a police officer may testify about the observations which led the officer to issue the citation, it is improper for the officer to testify that the driver violated the law." Martin, 896 P.2d at 978; see also Getchell, 65 P.3d at 57-58 (noting that the exclusion of traffic citations in negligence cases is generally "based in part on the rationale that such testimony amounts to an opinion on an ultimate issue that is for the trier of fact to decide ... and in part on the undue weight concerns"). In Florida, too, citations express legal judgments. They contain various boxes that officers must check when they believe that a listed offense has been committed. See, e.g., § 316.650(1)(a), Fla. Stat. (2001) (requiring a special box for "aggressive careless driving as defined in s. 316.1923").
A third reason for excluding citations is to protect defendants in traffic trials, and subsequent civil suits, from the prejudice caused by unflattering, legally irrelevant information recorded on the citation. For example, the uniform citation used in this case included a space for "[o]ther violations or comments pertaining to the offense." What the officer deems factually pertinent, however, can differ from what a court will deem legally relevant. A blanket rule against the admission of citations frees officers to record any information they find helpful, without exposing defendants to undue prejudice.
The majority apparently accepts these rationales as applied to traffic-related cases, but concludes they do not justify the exclusion of citations as evidence of forgery. I agree that in forgery trials the balance changes. Because the citation is the document on which the alleged forgery occurred, it assumes greater probative value. If admitted into evidence, it would become the centerpiece of the State's case. Conversely, excluding citations from evidence "will make convictions for forgery of a traffic citation more difficult." Dixon, 812 So.2d at 596. Indeed, one district court has speculated they will be "all but impossible" to obtain, Martinez, 870 So.2d at 20, although perhaps "the State can bring in evidence from the officer who issued the citation and witnessed the false signature, as well as other evidence of the defendant's identity and intent." Veilleux, 859 So.2d at 1227.
Despite their probative value in forgery trials, citations still pose a substantial risk of prejudice. Invariably, the citation will proclaim the officer's judgment that the defendant committed an offense other than forgery. Sometimes the alleged offense will be relatively minor, but at other times it may be quite serious (for example, drunk driving or aggressive careless driving). If the citation is admitted as evidence of forgery, in deciding whether the forgery was proved the factfinder may be influenced by the unproven traffic charge. The factfinder also may be influenced by any other negative observations in the citation, even if they have no legal bearing on the forgery charge. Finally, to the extent the State relies on the written citation rather than firsthand testimony, the context of the alleged forgery may not be fully explored.
None of this discussion is to suggest that traffic citations should be excluded from forgery trials. The only issue is whether it would be absurd to exclude them. I conclude it would not be. Whether the probative value of admitting citations in forgery trials outweighs the risk of prejudice to defendants is, in my view, a policy decision for the Legislature. Earlier this year, the Legislature amended section 316.650(9) to allow the admission of traffic citations to prove forgery. This policy is sensible and should make it easier to prosecute citation forgery cases. Another *455 sensible policy, which the majority suggests, would be to admit the citation into evidence but "merely redact[] the portions ... that do not relate to the forgery charge and that could potentially prejudice a defendant." Majority op. at 448. This policy would also be more convenient for prosecutors than the one in the statute at issue. But the Legislature is not required to make prosecutions as easy as possible. Sometimes what is easiest for prosecutors may be too hard on defendants. The Legislature must strike the balance it deems appropriate, within constitutional limits.
Here, the Legislature reasonably could have decided to accept fewer forgery convictions to prevent undue prejudice to defendants, knowing that most drivers who forge citations can also be charged with other crimes of misrepresentation that do not require the admission of unduly prejudicial documents. In this case, for example, the defendant faced additional charges of giving a false name or identification to a law enforcement officer and driving with a suspended or revoked license. Maddox, 862 So.2d at 783. Similarly, in the conflict case, the defendant faced a charge of driving without a valid license. Dixon, 812 So.2d at 595-96. Other charges might include misuse of a license, § 322.32, Fla. Stat. (2001), giving false oral reports under the traffic laws, id. § 316.067, or obstructing an officer, id. § 843.02.
Because the Legislature could have a rational basis for deciding that the costs of admitting traffic tickets in forgery trials outweigh the benefits, applying the plain meaning of section 316.650(9) cannot be considered absurd.[5] In the absence of absurdity, we have a responsibility to the Legislature, which carefully selected the words, and to defendants, whose liberty possibly hinges upon them, to enforce the statute as written.

D. Conclusion
I conclude from the plain meaning of section 316.650(9), Florida Statutes (2001), that traffic citations may not be admitted as evidence in any trial. This necessarily includes criminal trials for forgery of a traffic citation. I also conclude that such a result is not absurd and therefore the statute's plain language cannot be avoided.
For these reasons, I respectfully dissent.
PARIENTE, C.J., and QUINCE, J., concur.
NOTES
[1] The State requests that this Court revisit its decision to grant jurisdiction in the instant matter. The State alleges that the decision below is distinguishable from Dixon because the forged traffic citations at issue in Dixon were determined to have been "issued," 812 So.2d at 595, whereas the district court below determined that the citations at issue in the instant matter had been withdrawn by the issuing officer after he discovered that they had been issued in the name of Maddox's brother. Maddox, 862 So.2d at 784. While the State's assertion may be true, we conclude that this is a distinction without a material difference. The heart of the conflict revolves around the differences in the district courts' interpretations of the scope of section 316.650(9) of the Florida Statutes (2001). Therefore, we adhere to our initial decision to accept jurisdiction in the instant matter to resolve the conflict presented.
[2] The language of the version of section 316.650(9) that was at issue in Dixon was identical to the language found in the version of the statute that is at issue in the instant matter.
[3] After we granted review, the Legislature amended section 316.650(9) to include an explicit exception for citations "when used as evidence of falsification, forgery, uttering, fraud or perjury, or when used as physical evidence resulting from a forensic examination of the citation." Ch. 2005-164, § 42, Laws of Fla. The amendment leaves no doubt that a traffic citation may now be admitted as evidence of forgery.
[4] The panel in this case, also from the Second District, distinguished Veilleux and Martinez, noting that those cases involved certiorari review of non-final orders, which are subject to a more deferential standard of review. Maddox v. State, 862 So.2d 783, 785 n. 1 (Fla. 2d DCA 2003).
[5] The majority claims it would be absurd to apply the statute's plain meaning in two other contexts: (1) where the citation is alibi evidence in a murder trial; and (2) where it is evidence of the last driver stopped by a murdered police officer. Majority op. at 447. As I explained earlier, however, the absurdity exception to the plain meaning rule is intended to be narrow. We should depart from the statutory text only to the extent necessary to avoid absurd results. Thus, even assuming it would be absurd to apply the statute's plain meaning in certain murder trialsan issue on which I would reserve judgment until those unusual circumstances actually arisethat would not be a justification for departing from the statute in forgery trials, where the plain meaning does not produce absurd results. The majority suggests that the statute's plain meaning might be unconstitutional as applied to the first situation above. However, constitutionality is a separate issue from absurdity.