# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-1892
_____

TY CHRISTOPHER GARMANY,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Hamilton County.
Melissa G. Olin, Judge.

July 30, 2025

OSTERHAUS, C.J.

Some felony probationers who commit a "low-risk" violation of probation may not have their probation revoked and replaced with a prison sentence. § 948.06(2)(f)1., Fla. Stat. Ty Christopher Garmany argues that he qualified under this statute to have avoided the five-year prison sentence rendered by the trial court. We agree with Garmany's argument that he passed most of § 948.06(2)(f)1.'s four-part test for avoiding a prison sentence, including the § 948.06(2)(f)1.d. condition involving a first "current term" violation. But we nonetheless affirm Garmany's sentence. He didn't qualify to avoid a prison sentence because his VOP wasn't a "low-risk" technical violation as defined in the third part of the statutory test, *see* § 948.06(2)(f)1.c.

## I.

After Garmany pled guilty in 2022 to official misconduct arising from his position as a law enforcement officer, the trial court withheld adjudication and placed him on probation for five years. Garmany violated his probation in 2023, causing the trial court to revoke his probation, adjudicate him guilty, and sentence him to a year and a day in prison to be followed by a new term of probation running until 2027.

One of the conditions of Garmany's new probationary term required him to comply with his probation officer's instructions and to be truthful with the officer. In 2024, after Garmany's release from prison, the State filed an affidavit alleging that he had violated his probation again. According to the affidavit, Garmany lied to his probation officer and obtained permission to visit his "aunt," who was later discovered to be Garmany's girlfriend and not his aunt. After the State discovered his ruse, Garmany admitted to lying to the officer about who he was visiting thereby violating his probation. At the probation revocation hearing, Garmany argued that he could not be sentenced to prison for his new VOP because the mandatory probation reinstatement provision in § 948.06(2)(f)1. applied to him. In response, the State argued that Garmany could not benefit from this probation reinstatement provision because it was his second VOP in the case. The court agreed with the State. It revoked Garmany's probation and sentenced him to five years in prison. Garmany appealed.

## II.

On appeal, Garmany argues that he met all four conditions of §948.06(2)(f)1.a.-d., so that the trial court could not lawfully resentence him to a five-year prison term. *See Owens v. State*, 303 So. 3d 993, 998 (Fla. 1st DCA 2020) (holding that a probationer must meet all four requirements to qualify for sentencing under section 948.06(2)(f)). Section 948.06(2)(f)1. states:

> (f)1. Except as provided in subparagraph 3. or upon waiver by the probationer, the court shall modify or

continue a probationary term upon finding a probationer in violation when all of the following apply:

a. The term of supervision is probation.
b. The probationer does not qualify as a violent felony offender of special concern, as defined in paragraph (8)(b).
c. The violation is a low-risk technical violation, as defined in paragraph (9)(b).
d. The court has not previously found the probationer in violation of his or her probation pursuant to a filed violation of probation affidavit during the current term of supervision. A probationer who has successfully completed sanctions through the alternative sanctioning program is eligible for mandatory modification or continuation of his or her probation.

There is no argument here about Garmany meeting the first two conditions of this statute in (f)1.a. and b. Rather, the parties dispute whether Garmany satisfied (f)1.c. and d.

Focusing on the fourth condition in (f)1.d., Garmany argues that he committed just a single VOP during "the current term" of supervision. § 948.06(2)(f)1.d., Fla. Stat. Garmany's other VOP from earlier in the case occurred during a different, five-year probationary term. Indeed, the court had already revoked Garmany's original 5-year probation term (pursuant to a different, State-filed affidavit in 2023), which led to an adjudication of guilt and to Garmany receiving a prison-plus-probation sentence. Under § 948.06(2)(f)1.d.'s "current term" parameter, Garmany argues that the statute disregards the first VOP and revocation, looking only to whether another VOP was found during the "current term" of probation. *Id.*

The State counters with two arguments that Garmany failed to meet the requirements of § 948.06(2)(f)1. First, it defends the court's conclusion that Garmany didn't meet 948.06(2)(f)1.d.'s condition allowing for only a single VOP "during the current term" of supervision because of Garmany's previous VOP. *See Schmidt v. State*, 310 So. 3d 135, 137 (Fla. 1st DCA 2020) (conditioning the application of § 948.06(2)(f)1. to instances where there is just one low-risk violation of probation). The State adds a second argument

under paragraph (f)1.c., a tipsy coachman argument, that Garmany's violation also did not qualify under the statute as "a low-risk technical violation, as defined in paragraph (9)(b)." *See* § 948.06(2)(f)1.d., Fla. Stat.

Addressing, first, the "current term of supervision" issue, we agree with Garmany. Section 948.06 provides for the possibility of multiple terms of supervision within the same case in at least a couple of places. The statute at issue here, § 948.06(2)(f)1.d., conditions benefits based upon whether a VOP occurs during the "current" term of supervision. The statute's focus on the current term guides us toward disregarding VOPs from other, previous terms of supervision if they exist in a case, such as they do here. Additionally, § 948.06(3) recognizes the potential for multiple terms of supervision or probationary terms within a single case by providing that: "When the court imposes a *subsequent term* of supervision following a revocation of probation or community control, it shall not provide credit for time served while on probation or community control toward any *subsequent term* of probation or community control." (Emphasis added.) These clues within § 948.06 lead to the conclusion that different probationary terms may exist within a defendant's single case. And some defendants may have probationary terms revoked and replaced by a different term of probation or community control.

Consequently here, in Garmany's case, the straightforward conclusion is that his two VOPs occurred during different probationary terms of supervision. The trial court revoked Garmany's original five-year probationary term in 2023 based on the State's first affidavit filed during that probationary term ordered by the court. In that instance, Garmany conceded the State's VOP allegations and the court terminated the first probationary term of supervision. The court then sentenced Garmany to a prison sentence followed by a new, shorter term of probation. After Garmany's release from prison, he began serving the second, different, and shorter probationary term during which the State filed a second affidavit of violation stemming from new circumstances related to Garmany's recent lie to the probation officer about visiting his "aunt." This violation only jeopardized the second, current term of probation. And because the trial court hadn't previously found a VOP during Garmany's "current term"

of supervision, he wasn't precluded by § 948.06(2)(f)1.d. from receiving the statute's protection against a prison sentence.

Contrary to the State's argument, it's not absurd to interpret the "current term" provision in § 948.06(2)(f)1.d., to distinguish between VOPs occurring during different probationary terms in a case. *See Maddox v. State*, 923 So. 2d 442, 452 (Fla. 2006) (Cantero, J. dissenting) (quoting *Plante v. Smathers*, 372 So. 2d 933, 937 (Fla. 1979)) (recognizing the absurdity doctrine to "be reserved for cases where applying the plain meaning would border on irrationality. . . totally incongruous with the will of the people, [otherwise] the absurdity exception would threaten to undermine the separation of powers by allowing judges to substitute their own views of wise public policy for the compromises struck by legislators."). Not only does the "current term of supervision" language establish a clear textual basis to differentiate between the VOPs here, but it's not a totally incongruous, unreasonable, or ridiculous interpretation. *See Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (holding that "a literal interpretation of the language of a statute need not be given when to do so would lead to an unreasonable or ridiculous conclusion"). Rather, the statute reflects a rational policy of giving probationers one slender break when adjusting to each current probationary term, applying to just a single, low-risk misstep. This grace benefits state coffers, too, insofar as it avoids having to pay to imprison low-risk violaters. We take care here not to apply the absurdity doctrine as a means of substituting our judgment "of how legislation should read, rather than how it does read, in violation of the separation of powers." *Nassau County v. Willis*, 41 So. 3d 270, 279 (Fla. 1st DCA 2010).

On the State's second argument for affirmance, the tipsy-coachmen issue, we agree with its categorization of Garmany's violation. Specifically, the State argues that the trial court wasn't required by § 948.06(2)(f)(1) to limit Garmany's sentence because his violation did not meet the definition of a "low-risk technical violation, as defined by paragraph (9)(b)"—the third condition prescribed by § 948.06(2)(f)1.c. Paragraph (9)(b) defines low-risk violations with a discrete of list of actions as follows:

(b) As used in this subsection, the term "low-risk violation," when committed by a probationer, means any of the following:

1. A positive drug or alcohol test result.
2. Failure to report to the probation office.
3. Failure to report a change in address or other required information.
4. Failure to attend a required class, treatment or counseling session, or meeting.
5. Failure to submit to a drug or alcohol test.
6. A violation of curfew.
7. Failure to meet a monthly quota on any required probation condition, including, but not limited to, making restitution payments, paying court costs, or completing community service hours.
8. Leaving the county without permission.
9. Failure to report a change in employment.
10. Associating with a person engaged in criminal activity.
11. Any other violation as determined by administrative order of the chief judge of the circuit.

§ 948.06(9)(b), Fla. Stat.

None of these eleven items describe Garmany's violation here. Garmany admitted violating a condition of his probation requiring truthfulness with his probations officer. Garmany lied to his probation officer to gain permission to visit his girlfriend. Although Garmany's situation might resemble some of the low-risk violations listed in (9)(b) (or even some of the moderate-risk violations listed in (9)(c)), lying to a probation officer doesn't appear on (9)(b)'s list of low-risk violations. Nor does the statute provide a catch-all provision such as stating that a low-risk technical violation "includes but [is] not limited to" the listed violations, like in the mitigating circumstances statute regarding downward departure, *see* § 921.0026(1), Fla. Stat. Although Garmany's violation is obviously technical in nature, it isn't captured among the violations that can receive the benefit of § 948.06(2)(f)(1). And we lack the authority to add it to the list ourselves. *Perkins v. State*, 576 So. 2d 1310, 1312 (Fla. 1991)

6

(recognizing that "[o]ne of the most fundamental principles of Florida law is that penal statutes must be strictly construed according to their letter."); *see also Dozier v. Duval Cnty. Sch. Bd.*, 312 So. 3d 187, 192 (Fla. 1st DCA 2021) (quoting *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020)) ("In interpreting the statutes, we follow the 'supremacy-of-text principle'—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'"). Because Garmany's violation is not one of the violations enumerated on the (9)(b) list, his violation cannot be considered a low-risk technical violation for purposes of § 948.06(2)(f)1.c. Hence, § 948.06(2)(f)1 did not prevent the trial court from revoking Garmany's probation nor from sentencing him to prison.

AFFIRMED.

ROBERTS and BILBREY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Louis Charles Arslanian, Hollywood, for Appellant.

James Uthmeier, Attorney General, and Trisha Meggs Pate, Tallahassee Bureau Chief, and Michael Layton Schaub, Assistant Attorney General, Tallahassee, for Appellee.