PARIENTE, J.
In this case before us, Department of Highway Safety and Motor Vehicles v. Nader, 4 So.3d 705 (Fla. 2d DCA 2009), the Second District Court of Appeal determined two distinct but related issues: the first involving the administrative suspension of a driver’s license for refusal to submit to a breath test, and the second involving the scope of certiorari review by an appellate court of the circuit court’s decision concerning the administrative suspension. In its decision in Nader, the Second District passed upon the two questions involving these issues, which it certified to be of great public importance:
1. DOES A LAW ENFORCEMENT OFFICER’S REQUEST THAT A DRIVER SUBMIT TO A BREATH, *716 BLOOD, OR URINE TEST, UNDER CIRCUMSTANCES IN WHICH THE BREATH-ALCOHOL TEST IS THE ONLY REQUIRED TEST, VIOLATE THE IMPLIED CONSENT PROVISIONS OF SECTION 316.1932(l)(A)(l)(a) SUCH THAT THE DEPARTMENT MAY NOT SUSPEND THE DRIVER’S LICENSE FOR REFUSING TO TAKE ANY TEST?
2. MAY A DISTRICT COURT GRANT COMMON LAW CERTIORA-RI RELIEF FROM A CIRCUIT COURT’S OPINION REVIEWING AN ADMINISTRATIVE ORDER WHEN THE CIRCUIT COURT APPLIED PRECEDENT FROM ANOTHER DISTRICT COURT BUT THE REVIEWING DISTRICT COURT CONCLUDES THAT THE PRECEDENT MISINTERPRETS CLEARLY ESTABLISHED STATUTORY LAW?
Id. at 711. As more fully discussed below, we answer the first question in the negative and answer the second question in the affirmative.[1]
FACTS
The facts in this case arise from an arrest after the driver, Susan Nader, failed a roadside sobriety test and then had her license suspended based on the refusal to submit to a breath test:
On August 26, 2007, at approximately 1:30 a.m., Susan Nader was stopped by a Tampa police officer because she was driving with only her parking lights on and had stayed at an intersection through more than one cycle of the traffic lights. After she failed a roadside sobriety test, she was arrested and transported to a breath test center operated by the Hillsborough County Sheriffs Office.[2]
Nader, 4 So.3d at 706. The record reflects that she refused to take a breath test and thus her license was suspended.
Nader requested an administrative hearing, during which she argued that the implied consent warning given was improper because she was requested to submit to a “breath, blood, or urine” test when the law requires only a breath test. After the hearing officer upheld the license suspension, Nader appealed the decision to the circuit court pursuant to a statutory provision that provides for the method of review by a circuit court.
In her petition to the circuit court, Nader again argued that the implied consent warnings were improper, citing as authority the decision in State Department of Highway Safety and Motor Vehicles v. Clark, 974 So.2d 416 (Fla. 4th DCA 2007), in which the Fourth District Court of Appeal held that the circuit court could reverse a license suspension where the law enforcement officer warned the driver that her driving privileges would be suspended if she refused to submit to a breath, blood, or urine test. In its response to Nader’s petition, the Florida Department of Highway Safety and Motor Vehicles (the Department) set forth all the reasons the form affidavit used in this case was in accordance with applicable statutory provisions and other appellate case law. As to *717 Clark, the case relied on by Nader, the Department contended that the decision was wrongly decided because the Fourth District “overlooked and misapprehended the facts and governing law.” In other words, the Department asked the circuit court to disagree with precedent from another district.
The circuit court judge concluded that he was bound by the Fourth District’s decision in Clark and reluctantly granted the petition, stating, “But for the Clark opinion, the Court would deny the instant petition. The only test which Nader was specifically offered was the breath test. There is no indication that Nader felt that she was also obligated to take either or both of the other two tests.”
After the circuit court granted certiorari relief, the Department petitioned the Second District for review of the circuit court’s decision. See Nader, 4 So.3d at 706. The Second District explicitly disagreed with the Fourth District’s holding in Clark, stating, “We cannot agree with the reasoning in Clark that this type of language in the standard report form establishes that a driver was or might have been misled into thinking that a more invasive test may be required.” Id. at 709.
With regard to the certiorari issue, the Second District first acknowledged that “[c]ircuit court judges are aware of the requirement that they obey controlling precedent from other districts even if they disagree with the precedent.” Id. at 709-10 (citing Pardo v. State, 596 So.2d 665, 667 (Fla.1992)). The Second District explained, however, that when the circuit court is sitting in its appellate capacity, the “only method for a party to obtain district court review of such rulings is by a petition for writ of common law certiorari,” otherwise known as “second-tier” certiora-ri review. Id. at 710. The Second District acknowledged that in second-tier certiorari proceedings, “the district court is limited to determining whether the circuit court afforded the parties procedural due process and whether- it ‘applied the correct law’ or ‘departed from the essential requirements of the law.’ ” Id. (quoting Dep’t of Highway Safety & Motor Vehicles v. Stenmark, 941 So.2d 1247, 1249 (Fla. 2d DCA 2006)).
The Second District noted the “dramatic” ramifications of failing to address the erroneous decision of Clark when read in light of the plain language of the statute:
As this case demonstrates, the “breath, blood, or urine” language is contained in a standard form used in Hillsborough County, and probably elsewhere, since at least 2003. Unless the circuit court is free to disregard Clark, every driver’s license suspension based on a refusal to submit to a breath test in which a similar form is used would be overturned by the circuit courts based solely upon the decision in Clark denying certiorari relief. There would be no multi-district review and no ability for the other district courts to generate conflicting decisions.
Id. The Second District then relied on this Court’s opinion in Allstate Insurance Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003), which held that second-tier certiora-ri should not be used simply to grant a second appeal; rather, it should be reserved for those situations when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice. Nader, 4 So.3d at 710-11. The Second District recognized that the term “clearly established law” does not necessarily refer only to case law, but also derives from other legal sources, including rules of court, statutes, and constitutional law. See id. at 711 (quoting Kaklamanos, 843 So.2d at 890). Accordingly, the Second District held that it should grant sec *718 ond-tier certiorari based on a violation of clearly established law where a circuit court relied upon the controlling precedent of another district court, but in so doing disregarded the plain language of the applicable statute. The Second District certified the above two questions to this Court — one related to the statute, and the other related to the scope of second-tier certiorari review. Id. This review followed.
ANALYSIS
In order to answer the first certified question, we begin with the applicable statutory scheme regarding the circumstances under which a driver is required to submit to chemical testing by breath, blood, or urine and when a refusal to submit can result in a license suspension. We then explain the notice that must be given prior to a license suspension and the review process for drivers who request an administrative review regarding the license suspension. We next address the specific facts involved with Susan Nader as they apply to the legality of her license suspension.
In answering the second certified question, we first discuss the situations under which a district court may use its certiora-ri jurisdiction to review a circuit court’s decision, including both certiorari review of nonfinal orders and second-tier certiora-ri. We then discuss the requirement that district courts should act only where the error is one that is a departure from the essential requirements of law. Finally, we discuss the Second District’s decision in this case to determine whether the Second District properly exercised its second-tier certiorari jurisdiction.[3]

First Certified Question

Statutory Scheme for Florida’s Implied Consent Law

Section 316.1932, Florida Statutes (2007), commonly known as Florida’s implied consent law, addresses in three separate provisions the circumstances under which a driver is required to submit to chemical testing by breath, blood, or urine, and when a refusal to submit can result in a license suspension. The first subsection, section 316.1932(l)(a)l.a., which is the provision at issue in this case, provides that by operating a motor vehicle within the state, a driver is deemed to have given his or her consent to submit to an “approved chemical test or physical test” for “the purpose of determining the alcoholic content of his or her blood or breath.” § 316.1932(l)(a)l.a., Fla. Stat. (2007) (emphasis added). Further, an officer must tell the driver that “failure to submit to any lawful test of his or her breath ” will result in having his or her driver’s license suspended. Id. (emphasis added). Specifically, section 316.1932(l)(a)l.a. provides as follows:
Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by so operating such vehicle, deemed to have given his or her consent to submit to an approved chemical test or physical test including, but not limited to, an infrared light test of his or her breath for the purpose of determining the alcoholic content of his or her blood or breath if the person is lawfully ar *719 rested for any offense allegedly committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic beverages. The chemical or physical breath test must be incidental to a lawful arrest and administered at the request of a law enforcement officer who has reasonable cause to believe such person was driving or was in actual physical control of the motor vehicle within this state while under the influence of alcoholic beverages. The administration of a breath test does not preclude the administration of another type of test. The person shall be told that his or her failure to submit to any lawful test of his or her breath will result in the suspension of the person’s privilege to operate a motor vehicle for a period of 1 year for a first refusal, or for a period of 18 months if the driving privilege of such person has been previously suspended as a result of a refusal to submit to such a test or tests, and shall also be told that if he or she refuses to submit to a lawful test of his or her breath and his or her driving privilege has been previously suspended for a prior refusal to submit to a lawful test of his or her breath, urine, or blood, he or she commits a misdemeanor in addition to any other penalties.
(Emphasis added.)
The next provision addresses circumstances where a urine test is required: when the officer suspects that a driver is under the influence of chemical substances or controlled substances. See § 316.1932(l)(a)l.b„ Fla. Stat. That subsection provides that by operating a motor vehicle within the state, a driver is deemed to have given his or her consent to submit to “a urine test” for the purpose of determining the presence of chemical or controlled substances. Id. Similar to subpara-graph a., in subparagraph b., an officer must tell the driver that failure to “submit to any lawful test of his or her urine” will result in having his or her driver’s license suspended. Id.
In the third provision, the implied consent law addresses when a blood test is required. See § 316.1932(l)(c), Fla. Stat. Subsection 316.1932(l)(e) provides that by operating a motor vehicle within the state, a driver is deemed to have given his or her consent to submit to “an approved blood test for the purpose of determining the alcoholic content of the blood” or determining the presence of chemical or controlled substances where there is a reasonable cause to believe that the person was driving while under the influence of alcohol or chemical substances and the person appears for treatment at a hospital, clinic, or other medical facility. Id. Unlike the other provisions, however, the warning relative to a refusal to submit to the blood test is required only for those drivers who are capable of refusing the test. Id.
Relating to the above three provisions, subsection 316.1932(l)(d) provides that when an officer arrests a driver for allegedly being under the influence and fails to request a chemical or physical breath test, the driver can request a chemical or physical breath test as well as a urine test or blood test. In other words, a driver has the right to request additional testing as provided by statute.

Notice and Procedure to Request Administrative Review

In conjunction with the implied consent law, section 322.2615, Florida Statutes (2007), addresses the consequence of a license suspension and provides the driver with an opportunity to request an administrative review. Pursuant to this provision, a law enforcement officer must suspend a person’s driving privilege if that person has refused to submit to “a urine test or a test of his or her breath-alcohol or blood- *720 alcohol level.” § 322.2615(l)(a), Fla. Stat. (2007). The driver must receive a notice of suspension that “shall inform the driver” that the “driver refused to submit to a lawful breath, blood, or urine test and his or her driving privilege is suspended for a period of 1 year for a first refusal” and that “the suspension period shall commence on the date of issuance of the notice of suspension.” § 322.2615(l)(b), Fla. Stat. Subsection 322.2615(2) then requires that
the law enforcement officer shall forward to the department, within 5 days after issuing the notice of suspension, the driver’s license; an affidavit stating the officer’s grounds for belief that the person was driving or in actual physical control of a motor vehicle while under the influence of alcoholic beverages or chemical or controlled substances; the results of any breath or blood test or an affidavit stating that a breath, blood, or wine test was requested by a law enforcement officer or correctional officer and that the person refused to submit.
§ 322.2615(2), Fla. Stat. (emphasis added).
In order to comply with this provision, the law enforcement officer in this case filled out a standardized form affidavit, entitled “State of Florida Department of Highway Safety & Motor Vehicles Affidavit of Refusal To Submit to Breath, Urine or Blood Test” (Form HSMV 78054), which stated:
I did request said person to submit to a breath, urine, or blood test to determine the content of alcohol in his or her blood or breath or the presence of chemical or controlled substances therein. I did inform said person that any refusal to submit to such test or tests would result in the suspension of his or her privilege to operate a motor vehicle.... In cases involving a Commercial Motor Vehicle, I did inform the driver that this refusal will result in the disqualification of the driver’s Commercial Driver’s License/privilege ....
Said person did at that time and place refuse to submit to such test or tests.
Like the notice of suspension, the affidavit was written on a form, the use of which was not limited to situations arising under subsection 316.1932(l)(a)l.a., which applies only to driving under the influence of alcohol and requires a driver to submit to a breath test.[4] This affidavit was apparently used by the Department in all situations where a driver has refused testing, including those situations involving commercial motor vehicles, which are not addressed in section 316.1932, but rather in section 322.63, Florida Statutes (2007).
Section 322.2615 further provides for the method by which the driver can request review of the license suspension. When a license is suspended for the “refusal to submit to a breath, blood, or urine test,” the driver has the opportunity to request a formal review hearing in which a hearing officer determines the following matters, as pertinent to the issue here:
2. Whether the person whose license was suspended refused to submit to any such test after being requested to do so by a law enforcement officer or correctional officer.
3. Whether the person whose license was suspended was told that if he or she refused to submit to such test his or her privilege to operate a motor vehicle would be suspended for a period of 1 year or, in the case of a second or subsequent refusal, for a period of 18 months.
§ 322.2615(7)(b)2.-3., Fla. Stat. (2007).

Application of the Law to This Case

Here, Nader’s driver’s license was suspended as a result of her refusal to *721 submit to a breath test after a police officer observed her sitting through a couple of light cycles with only her parking lights turned on. At the administrative proceeding challenging the license suspension, neither side presented any testimony; only documentary evidence was relied upon. After being denied relief in the administrative hearing, Nader challenged her license suspension to the circuit court. Nader alleged that the affidavit submitted by the officer in this case was part of the implied consent warning and that in the form affidavit, the officer attested that he requested her to submit to a breath, urine, or blood test.
The only “possible anomaly” pointed out by the Second District is that instead of being asked to submit to a “breath-alcohol” test, the form used the phrase “breath, blood, or urine” test. See Nader, 4 So.3d at 709. The Second District, disagreed with the Fourth District in Clark that the standard form could mislead a driver into thinking that she would have to submit to a more invasive test, such as the withdrawal of blood, than the test that was authorized by statute. Id. (citing Clark, 974 So.2d at 418).
We agree with the Second District that the “use of ‘or’ plainly suggests the driver has a choice of one of the three tests and is free to choose the breath test if the driver prefers the least invasive method.” Nader, 4 So.3d at 709. In reaching this conclusion, the Second District cited to Sparkman v. McClure, 498 So.2d 892, 895 (Fla.1986), in which we recognized that the “word ‘or’ is generally construed in the disjunctive when used in a statute or rule. The use of this particular disjunctive word in a statute or rule normally indicates that alternatives were intended.” Sparkman, 498 So.2d at 895 (citation omitted). In this case, as pointed out by the circuit court, the only test that the driver was specifically offered was the breath test and that is the only test that she refused. Further, as found by the circuit court, based on the record, “[tjhere is no indication that Nader felt that she was also obligated to take either or both of the other two tests.”
Accordingly, we answer the first certified question in the negative. We now address the second certified question, which presents the issue of whether the Second District’s decision to grant the Department’s petition for certiorari exceeded the limited scope of its second-tier certio-rari review.

Second Certified Question

Common-Law Certiorari Proceedings

A petition for writ of certiorari is a method for a litigant to obtain review of a circuit court order that is distinctly different from appellate review. A district court’s certiorari review of a circuit court’s decision may occur in two discrete situations: (1) certiorari review of a nonfinal order entered by the circuit court; and (2) second-tier certiorari, which is certiorari review of an order of the circuit court sitting in its appellate capacity to review a ruling from either the county court or an administrative or other governmental entity-
In the first situation, involving nonfinal orders entered by the circuit court in the course of ongoing proceedings, a party seeking review through a petition for writ of certiorari must demonstrate: (1) a material injury in the proceedings that cannot be corrected on appeal (sometimes referred to as irreparable harm); and (2) a “departure] from the essential requirements of the law.” Belair v. Drew, 770 So.2d 1164, 1166 (Fla.2000). As stated in Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987):
A non-final order for which no appeal is provided by Rule 9.130 is reviewable *722 by petition for certiorari only in limited circumstances. The order must depart from the essential requirements of law and thus cause material injury to the petitioner throughout the remainder of the proceedings below, effectively leaving no adequate remedy on appeal.
Because Florida Rule of Appellate Procedure 9.130 limits the types of appealable nonfinal orders and because appellate review of the final order is available, the case law is very specific that when a litigant petitions the appellate court for a writ of certiorari as to a nonfinal order, both the requirements of irreparable harm and a departure from the essential requirements of law must be met. Further, the law is clear that certiorari relief is intended to be available only in very limited circumstances and should not be a means of circumventing rule 9.130 or interfering with ongoing proceedings in the trial court.
Separate from the limited review available to nonfinal orders, the second situation involves second-tier certiorari, which likewise can be divided into two subcategories of cases: those involving circuit court review of county court orders and those involving circuit court review of administrative decisions. Review of these final orders are also different from full appellate review, but the reasoning for the narrow review is based primarily on the principle that a litigant is not entitled to a second appeal.
The first subcategory of second-tier certiorari cases involves final decisions, judgments, or orders rendered by the county court after a full hearing or trial. Those final decisions are appealed to the circuit court sitting in its appellate capacity, and in those circumstances, appellate review by the circuit court is similar to appellate review by district courts of appeal. Because the assumption is that the litigant has already received full appellate review by the circuit court (either sitting in three-judge panels or by one judge alone), the district court’s discretion to grant certiorari review is restricted to those errors that “depart from the essential requirements of law.” As stated in the oft-cited opinion of Combs v. State, 436 So.2d 93 (Fla.1983), which addressed the scope of this certiorari review:
[T]he phrase “departure from the essential requirements of law” should not be narrowly construed so as to apply only to violations which effectively deny appellate review or which pertain to the regularity of procedure. In granting writs of common-law certiorari, the district courts of appeal should not be as concerned with the mere existence of legal eiror as much as with the seriousness of the error. Since it is impossible to list all possible legal errors serious enough to constitute a departure from the essential requirements of law, the district courts must be allowed a large degree of discretion so that they may judge each case individually. The district courts should exercise this discretion only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.

It is this discretion which is the essential distinction between review by appeal and review by common-law cer-tiorari.

Id. at 95-96 (emphasis added).
The second subcategory of second-tier certiorari cases comprises those that involve review of decisions rendered by administrative or other governmental agencies — the type of second-tier certiora-ri that is involved in this case. In Haines City Community Development v. Heggs, 658 So.2d 523 (Fla.1995), the Court observed:
*723 As a case travels up the judicial ladder, review should consistently become narrower, not broader. We have held that circuit court review of an.administrative agency decision, under Florida Rule of Appellate Procedure 9.030(c)(3), is governed by a three-part standard of review: (1) whether procedural due process is accorded; (2) whether the essential requirements of law have been observed; and (3) whether the administrative findings and judgment are supported by competent substantial evidence. [City of Deerfield, Beach v.] Vaillant, 419 So.2d [624,] 626 [(Fla.1982) ]. The standard of review for cer-tiorari in the district court effectively eliminates the substantial competent evidence component. The inquiry is limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law. As explained above, these two components are merely expressions of ways in which the circuit court decision may have departed from the essential requirements of the law. In short, we have the same standard of review as a case which begins in the county court. See William A. Haddad, “Writ of Certiorari in Florida,” in The Florida Bar, Florida Appellate Practice § 18.3 (3d ed.1993).

This standard, while narrow, also contains a degree of flexibility and discretion. For example, a reviewing court is drawing new lines and setting judicial policy as it individually determines those errors sufficiently egregious or fundamental to merit the extra review and safeguard provided by certio-rari. This may not always be easy since the errors in question must be viewed in the context of the individual case.

Id. at 530-31 (emphasis added) (footnote omitted).
However, appellate courts must exercise caution not to expand certiorari jurisdiction to review the correctness of the circuit court’s decision. This would deprive litigants of the finality of judgments reviewed by the circuit court and ignore “societal interests in ending litigation within a reasonable length of time and eliminating the amount of judicial labors involved in multiple appeals.” Id. at 526 n. 4. “A more expansive review would also afford a litigant two appeals from a court of limited jurisdiction, while limiting a litigant to only one appeal in cases originating in a trial court of general jurisdiction.” Custer Med. Ctr. v. United Auto. Ins. Co., 62 So.3d 1086, 1093 (Fla.2010).
Moreover, certiorari jurisdiction cannot be used to create new law where the decision below recognizes the correct general law and applies the correct law to a new set of facts to which it has not been previously applied. In such a situation, the law at issue is not a clearly established principle of law. See Ivey v. Allstate Ins. Co., 774 So.2d 679, 682-83 (Fla.2000). This does not mean, however, that clearly established law consists only of pri- or judicial precedent. In Kaklamanos, 843 So.2d at 890, we explicitly held that “ ‘clearly established law’ can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law.” (Emphasis added.) Accordingly, a district court may grant a writ of certiorari after determining that the decision is in conflict with the relevant statute, so long as the legal error is also “sufficiently egregious or fundamental to fall within the limited scope” of certiorari jurisdiction. Id.

Application of the Law to This Case

In turning to this case, we begin by noting that the method of review of *724 the agency decision was provided for by statute. Specifically, in challenging her license suspension, Nader was required to “request a formal or informal review of the suspension by the department within 10 days after the date of issuance of the notice of suspension.” § 322.2615(l)(b)3., Fla. Stat. (2007). The statute further provides that a “person may appeal any decision of the department sustaining a suspension of his or her driver’s license by a petition for writ of certiorari to the circuit court.... This subsection shall not be construed to provide for a de novo appeal.” § 322.2615(13), Fla. Stat. (2007). Therefore, although the statutory provision commingles the term “appeal” with “petition for writ of certiorari,” the procedure to be followed is to file a petition for writ of certiorari with the circuit court, where the circuit court engages in appellate review of the decision. However, unlike an ordinary appeal from the circuit court to the district court, the circuit court is limited in a significant way because there is a judicially imposed requirement that a circuit court must abide by precedent from another district court of appeal if no precedent exists from its own district.
The reason for this restriction was explained by the Court in Pardo:
The District Courts of Appeal are required to follow Supreme Court decisions. As an adjunct to this rule it is logical and necessary in order to preserve stability and predictability in the law that, likewise, trial courts be required to follow the holdings of higher courts — District Courts of Appeal. The proper hierarchy of decisional holdings would demand that in the event the only case on point on a district level is from a district other than the one in which the trial court is located, the trial court be required to follow that decision. Alternatively, if the district court of the district in which the trial court is located has decided the issue, the trial court is bound to follow it. Contrarily, as between District Courts of Appeal, a sister district’s opinion is merely persuasive.
596 So.2d at 666-67 (emphasis added) (quoting State v. Hayes, 333 So.2d 51, 53 (Fla. 4th DCA 1976)). Therefore, a circuit court (even one functioning in its appellate capacity) is bound to apply existing precedent from another district if its district has not yet spoken on the issue. In this regard, a party is unable to argue that the circuit court should rule differently on the same issue of law — something that the party is able to do in cases on direct appeal to the district court. The Second District recognized the problem with the Pardo constraint as applied to certiorari proceedings:
Our constitutional system of review in Florida has been built on a foundation that encourages debate among the district courts and a screening of cases so that direct conflict between the districts on dispositive issues is usually required for the supreme court to resolve an issue. This system is difficult to employ in the narrow context described in this case. If we hold that the trial court did not depart from the essential requirements of the law by following the Fourth District, then any discussion we may undertake arguing that the Fourth District’s opinion is incorrect becomes mere dicta. It creates no conflict that would authorize supreme court review, and it probably creates no binding precedent allowing the next circuit judge in this district to disregard the Clark decision. On the other hand, we are loath to suggest that a circuit court may reject what appears to be controlling precedent in this context based upon its own interpretation of a statute or constitutional provision.
Nader, 4 So.3d at 710.
To address this tension between the obligation of a circuit court (even one sitting *725 in its appellate capacity) to respect precedent from other districts when there is no precedent from its district and the obligation of a district court not to provide a second appeal but to correct only violations of clearly established law, the Second District concluded:
[A] district court is authorized to find clearly established law on the face of a statute even when another district court has interpreted the statute to require a different outcome in a published opinion. Moreover, a district court is then authorized to grant certiorari relief and quash a circuit court decision that obeyed the controlling precedent and disobeyed the plain language of the statute. We therefore grant the Department’s petition for writ of certiorari and quash the circuit court’s opinion.
Id. at 711.
To the extent that the Second District advocates a rule allowing second-tier cer-tiorari review when an appellate court merely disagrees with precedent from another court, we reject this as overly broad. First, we note that there is presently an important difference between the review of administrative proceedings, which proceed directly to the circuit court, and the review of county court proceedings, which can be either appealed to the circuit court or heard by the district court through certified question. In the latter situation, the appellate rules expressly provide for a means by which the county court can certify a question to be of great public importance to the district court, thus providing a method by which the county court can receive a ruling on whether precedent from another district controls. See Fla. R.App. P. 9.030(b)(4)(A); Fla. R.App. P. 9.160. In that circumstance, the circuit court appellate review is essentially bypassed and, if the appeal is accepted, the district court engages in plenary appellate review over the legal issue raised by the county court decision. See, e.g., Geico Indemo. Co. u Physicians Grp., 47 So.3d 354 (Fla. 2d DCA 2010). The option of certification of a question to the district court is not presently available, either by rule or statute, for a circuit court hearing an appeal of an administrative decision.
However, even with that procedural difference, we emphasize that the district court should not grant relief merely because it disagrees with the precedent from another district court; rather, the district court must determine whether the decision of the circuit court, even though it followed an opinion from another district court, is a departure from the essential requirements of law resulting in a miscarriage of justice. Here, the Second District, in granting second-tier certiorari after reviewing the provisions of the implied consent law in detail, concluded that while the circuit court attempted to obey controlling precedent, its decision (and the decision in Clark) was in fact contrary to clearly established statutory law. Nader, 4 So.3d at 707-10.
Further, the Second District noted the “dramatic” ramifications of the situation in this case, where if the district court was unable to act, circuit courts would be required to overturn every driver’s license suspension based on a refusal to submit to a breath test in which a similar form was used. See id. at 710. The Second District stressed that its second-tier certiorari jurisdiction could not be used merely to grant a second appeal but was reserved for those situations where there was a violation of clearly established principles of law resulting in a miscarriage of justice. Id. at 710-11. The district court concluded that this standard was met in this ease, and thus it was authorized to grant certiorari relief and quash a circuit court decision where the court below obeyed the control *726 ling precedent, but in doing so, disobeyed the plain language of the statute. Id. at 711.
We agree that the Second District did not exceed the scope of its authority to grant certiorari relief and uphold the license suspension in this case. Throughout this Court’s pronouncements concerning the proper application of second-tier cer-tiorari review, this Court has repeatedly emphasized that certiorari review cannot be used as a means of granting a second appeal and cannot be used simply because the district court disagrees with the outcome of the circuit court’s decision. Instead, we have held that district courts should act only where the error is one that is a departure from the essential requirements of law. Because it would be impossible to create an exhaustive list of such situations, this Court has repeatedly emphasized that district courts must be “allowed a large degree of discretion so that they may judge each case individually.” Combs, 436 So.2d at 96.
Here, the Second District properly used second-tier certiorari. In reviewing whether it should grant certiorari in this case, the Second District focused entirely on whether the circuit court had applied the correct law, and when it determined that the incorrect law had been applied, it looked to the seriousness of the error. The Second District did not reanalyze the application of the law to the facts. Moreover, in Kaklamanos, we recognized that statutory provisions constitute “clearly established law.” Thus, the Second District correctly based its certiorari analysis on those factors that we have stressed. This result is not changed simply because the circuit court followed binding precedent from another district that was clearly contrary to the plain language of the statute itself. To hold otherwise would prevent a district court from using its second-tier certiorari review to correct “a violation of clearly established principle of law that resulted in a miscarriage of justice,” simply because a prior decision of another district court of appeal analyzed the controlling statute. Such a result would treat case law interpreting a statute as more authoritative than the statute itself — a proposition that is not supported by our precedent. Further, as pointed out by the Second District, the failure to apply the correct law would have dramatic and wide-reaching ramifications for license suspensions since the standard form affidavit was used by the Department throughout the State.[5]
The dissent contends that our decision “eviscerates over one hundred years” of well-established jurisprudence in order to permit a circuit court to bring an issue to the district court through second-tier cer-tiorari. To the contrary, our decision has expressly rejected such a proposition. We have neither created new law with regard to second-tier certiorari, nor expanded second-tier certiorari to create any exception for “matters of great public importance.” The test that has always applied to second-tier certiorari governs this case: it should be granted only when there is a departure from the essential requirements of law resulting in a miscarriage of justice. See Heggs, 658 So.2d at 530.
*727 District courts of appeal must be able to correct serious errors resulting in a miscarriage of justice. As recognized by Heggs, the certiorari standard must contain “a degree of flexibility and discretion.” Id. The determination must be made by the district court of appeal in a cautious manner to ensure that the error is “sufficiently egregious or fundamental to merit the extra review and safeguard provided by certiorari.” Id. at 531. It is this last admonition that bears emphasis; a balance must be struck between respecting the finality of appellate review provided by the circuit court’s appellate decision and the necessity of having the availability of certiorari to use in a narrow group of cases, which “merit the extra review and safeguard provided by certiorari.” Id. By our decision, we reaffirm our holding in Kaklamanos — that statutes also constitute “clearly established law,” meaning that a district court can use second-tier certiorari to correct a circuit court decision that departed from the essential requirements of statutory law. See Kaklamanos, 843 So.2d at 890 (“ ‘[C]learly established law' can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law.” (emphasis added)).
CONCLUSION
In conclusion, we answer the first certified question in the negative. The Second District properly found that there was no violation of the implied consent law under the circumstances of this case. Accordingly, we approve of the Second District’s decision and disapprove the Fourth District’s opinion in Clark to the extent that it concluded to the contrary. We answer the second question in the affirmative and hold that a district court may exercise its discretion to grant certiorari review of a circuit court decision reviewing an administrative order, so long as the decision under review violates a clearly established principle of law resulting in a miscarriage of justice, even if the circuit court decision was based on precedent from another district.
We further refer the issue to the Florida Bar Appellate Court Rules Committee to consider whether a circuit court should be able to certify a question of great public importance to the district court in circumstances where it is reviewing a decision of an administrative agency, similar to a county court’s authority by rule to certify final orders to the district.
It is so ordered.
CANADY, C.J., and QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
LEWIS, J., dissents with an opinion.

. Based on these certified questions, we have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

2. The arrest report stated the officer observed Nader’s car “with only parking lights on sitting at an intersection. The vehicle [sat through] a couple of light cycles. The driver of the [vehicle] had the distinct odor of an alcoholic beverage on her breath as she spoke. Her eyes were bloodshot and watery. Her speech was at times slurred [and] thick-tongued. She was unsteady on her feet. She was unsure of her location. She performed SFSTs [standardized field sobriety tests] which showed clues of impairment."

. We address the certified questions in this case in the order in which they are presented. Contrary to the dissent’s assertion, we treat the questions in this order because to answer the second certified question (regarding the situations under which a district court may use its certiorari jurisdiction to review a circuit court’s decision and whether the decision below involved a departure from the essential requirements of law), we must first understand the relevant law at issue, which is the subject of the first certified question.

. Nader's brief states that the Department now uses another form where the officer can check off a box indicating which tests were requested.

. The Third District most recently granted certiorari relief to rectify exactly the same error as in Nader, relying on Nader and adopting the Second District’s reasoning that the propriety of the request and warning to submit to testing involves "clearly established law” and the contrary interpretation in Clark "disobeyed the plain language of the statute.” State Dep’t of Highway Safety & Motor Vehicles v. Freeman, 63 So.3d 23, 27 (Fla. 3d DCA 2011).