SAWAYA, J.
This is a very unusual case involving an otherwise innocuous application for a zoning variance to the Seminole County Land Development Code (Code). It merits that description because of the unusual decisions that were made as the case progressed through the various review proceedings after the application was denied by the Seminole County Board of Adjustments (BOA). When the Seminole County Board of County Commissioners (Board) heard the appeal of the denial of the variance application, the Board concluded that the variance should be granted and, at the same time, concluded that the variance was not necessary. Despite the latter conclusion, and in accord with the former conclusion, the Board rendered a written variance that is contained in the record. What is even more unusual, in the certio-rari proceedings in the circuit court, the court upheld the decision to grant the variance, reasoning that the variance was not necessary. That decision led to the filing of a Petition for Writ of Certiorari in this court. In the current certiorari proceedings, the Board attempts to explain its obvious contradictory conclusions by proclaiming that the variance it issued is a “variance in name only.” In the context of these proceedings and the applicable Code provisions, we do not know what that means or, for that matter, what a “variance in name only” is.
Analysis of the procedural path this case has traveled and the decisions we review will perhaps lead the reader to conclude that our description of this case as unusual is understated and restrained. But the description is an aside: the record reveals the facts and the decisions that will direct our review of this case, and so we must consider and analyze them as best we can.
The applicants for the variance are Calvin and Regine Mills. They are the owners of a residence located adjacent to the residence of the Petitioner, Steven Wolk, who is an objector to the application. Their properties fall within the zoning area designated R-1AA by the Code. The significance of that designation is found in pertinent parts of the Code that require closed fences composed of opaque, non-see-through material in excess of three feet tall to be set back a minimum of twenty-five feet from the road in front of the property. Seminole County, Fla., Land Development Code § 30.1349(a) (2011) (“[A] closed fence or wall in excess of three (3) feet in height shall maintain the same district front yard setback requirement as the main or principal dwelling structure.... ”); Seminole County, Fla., Land Development Code § 30.206(b)(1) (“The following minimum front ... yards shall be observed: On properties assigned the R-1AA ... zoning classification! ], the following minimum yards shall be observed: Front. Twenty-five (25) feet.”).
The Millses’ home is situated on a cul-de-sac that is part of a road running along the western boundary of their property. The southern boundary is adjacent to the northern boundary of Wolk’s residence. According to Wolk, the Millses purchased their property -with an existing “stockade” fence made of wood that stood six feet tall along the southern boundary. It did not extend to within twenty-five feet of the *1221 road. The Millses applied for a permit to repair or replace the existing fence, but they attached a drawing on a survey that showed they were also applying for a permit to erect an extension of the existing fence to within one foot of the road. The drawing further showed that the extension connected to an entirely new fence of the same height and made of the same material to be erected along the western boundary where the road abuts the Millses’ property. When the Millses presented their application, they were informed by a Seminole County permit technician that the extension and the new fence were in violation of the pertinent Code provisions. They were further informed that in order to proceed with their plans, they would have to obtain a variance. The Millses then repaired the existing fence and filed an application for a variance to erect the extension and the new portion of the fence. Before their application was considered by the BOA, the Millses erected the extension and the new fence consistent with the drawing appended to their permit application.
The BOA has the authority to grant a variance of the type requested by the Millses provided six criteria contained in the Code are met:
1. That special conditions and circumstances exist which are peculiar to the land, structure, or building involved and which are not applicable to other lands, structures, or buildings in the same zoning classification; and
2. That the special conditions and circumstances do not result from the actions of the applicant; and
3. That granting the variance requested will not confer on the applicant any special privilege that is denied by Chapter 30 to other lands, buildings, or structures in the same zoning classification; and
4. That literal interpretation of the provisions of Chapter 30 would deprive the applicant of rights commonly enjoyed by other properties in the same zoning classification and would work unnecessary and undue hardship on the applicant; and
5. That the variance granted is the minimum variance that will make possible the reasonable use of the land, building, or structure; and
6. That the grant of the variance will be in harmony with the general intent and purpose of Chapter 30, will not be injurious to the neighborhood, or otherwise detrimental to the public welfare.
Seminole County, Fla., Land Development Code § 30.43(b)(3) (2011). The BOA denied the variance application, concluding that “[o]ne or more of the six criteria under the [Code] for granting a variance ha[d] not been satisfied,” and that “[t]he applicant still retained] reasonable use of the property without the granting of the requested variance.”
The Millses appealed the denial of their variance application to the Board. Wolk filed his written objections, arguing in pertinent part that the extension and new fence (1) completely cut off the view from Wolk’s property to the northwest, (2) had been built so close to the property line between the properties that it was uncertain if it, in fact, encroached on Wolk’s property, and (3) met none of the factors that the Board was supposed to consider in ruling on an application for a variance pursuant to section 30.43(b)(3) of the Code. The Seminole County Planning Division submitted a Staff Report recommending the Board sustain the denial of the variance application.
The Board convened a hearing to address the appeal. Sometime prior to the hearing, the Millses apparently changed the part of fence in the front of their house *1222 to a metal fence with sufficient spaces between the vertical bars to make that part of the fence compliant with the Code. Wolk and several residents of the neighborhood appeared at the hearing to voice their objection to the variance. Numerous photographs of the fence and the Millses’ property were submitted. The hearing ended with analysis of one picture of the property and the fence. That picture has an arrow pointing to the corner where the southern portion of what clearly appears to be a wooden opaque fence connects to the see-through metal portion of the fence. What is remarkable about this picture is that the arrow designates the wooden portion of the fence to be three feet from the front yard, set back a short distance from the road. We find the following discussion about this picture equally remarkable:
MR. SIKONIA: I think this is how it exists today.
COMMISSIONER CAREY: Okay. So if that’s the current picture, that’s allowable; is that correct? Can staff, somebody from staff answer the question?
MR. SIKONIA: If it goes—
MS. GUILLET: This is Nicole Guillet, Building Management Director, for the record. If the rod (sic) iron fence that runs along that side lot line is set back twenty-five feet, then, yes.
COMMISSIONER CAREY: From the corner of the property.
MS. GUILLET: From the front of the lot.
COMMISSIONER CAREY: Uh-huh.
MS. GUILLET: We don’t know how far back it goes. If you remove two panels of stockade fence, I would suspect that that’s less than twenty-five feet.
Despite the fact that there are no measurements on this picture other than the arrow designating a three foot setback of the wooden opaque fence, despite the obvious skepticism of the Building Management Director whether that portion of the wooden fence was set back far enough to comply with the Code, and despite the clear depiction of the wooden fence on the southern boundary, the Board granted the variance and then declared a variance was not necessary. The Board went so far as to order a refund of the Millses’ application fees, indicating that they had expended the money “on some sort of a mix-up.” We see nothing in this record to show that the Board considered the six criteria in section 30.43(b)(3) of the Code in reaching its conclusion to grant the variance.
A Petition for Writ of Certiorari was filed by Wolk in the circuit court, and an order denying the Petition was rendered. If the Board’s decision was not puzzling enough, the circuit court’s order reveals another puzzle. That order specifically states that “[t]he sole issue is whether [the Board’s] decision to grant the variance was lawful.” But the order then launches into analysis and reasoning that ends with the conclusion that a variance was not actually granted because the Board had concluded that a variance was not necessary. In that analysis, we see no explanation for the discrepancy that clearly exists between the Board’s conclusion that no variance was necessary and the fact that the Board actually issued an order granting the variance. That a variance was granted by the Board is clearly revealed by the order entered by the Board and reviewed by the circuit court that provides in pertinent part:
NOW, THEREFORE, IT IS ORDERED AND AGREED THAT:
(1) The Board hereby agrees to overturn a decision by the Board of Adjustment to deny a variance at 853 Dover Road for a front yard setback variance from 25 feet to 1-foot for an existing privacy fence in the R-1AA (Single- *1223 Family Dwelling) district; located at 853 Dover Road and hereby grants a variance as follows:
a. The west property line front setback shall be 1-foot, consistent with the placement of the existing fence.
b. The south property line front setback shall be 8 feet, consistent with the placement of the existing fence.
(2) All development shall fully comply with all the codes and ordinances in effect in Seminole County at the time of issuance of permits including all impact fee ordinances.
(3) The conditions upon this development permit and the commitments made as to this development permit, all of which have been accepted by and agreed to by the owner of the property are as follows:
a. The variance granted will apply only to a fence as depicted on the attached site plan and photograph.
(4) This Development Order touches and concerns the aforedescribed property and the conditions, commitments and provisions of this Development Order shall perpetually burden, run with and follow the said property and be a servitude upon and binding upon said property unless released in whole or part by action of Seminole County by virtue of a document of equal dignity herewith. The owner of the said property has expressly covenanted and agreed to this provision and all other terms and provisions of this Development Order.
In its response filed in the current certiorari proceedings, the Board labels that document a “variance in name only.” This is yet another puzzle we must attempt to solve because “variance in name only” appears nowhere in the lexicon of the Code or the case law we have reviewed. This order is much more than just a label attached to words on a page: it has clear and precise provisions that constitute a servitude on the Millses’ property that can only be released by “a document of equal dignity.” Given the label placed on the order by the Board, we are hesitant to consider what labels may be placed on any “document of equal dignity” should a release be sought in the future. We solve this puzzle by concluding that this is indeed a variance in name and effect, as the order contains requirements of considerable consequence, and it will be treated as such by this court.
Having discussed the procedural and factual background of this case, the limited scope of our certiorari review requires attention. The proceeding before us falls into the subcategory of certiorari cases involving a circuit court decision that reviewed a decision rendered by a governmental agency. Nader v. Fla. Dep’t of Highway Safety & Motor Vehicles, 87 So.3d 712 (Fla.2012). In those instances (and in instances where the decision reviewed is rendered by an administrative agency), the circuit court is required to determine whether 1) procedural due process was accorded the parties; 2) the essential requirements of the law were complied with; and 3) the findings and judgment rendered by the governmental agency are supported by competent substantial evidence. Id. at 723 (quoting Haines City Cmty. Dev. v. Heggs, 658 So.2d 523 (Fla.1995)). When that review is completed and the case departs the circuit court, subsequent review by a district court of appeal is limited to whether the circuit court afforded procedural due process to the parties and whether the court applied the correct law (or, stated differently, whether the circuit court decision departs from the essential requirements of the law). Id. If the circuit court failed to apply the correct law resulting in a miscarriage of justice, a district court may correct the error. Id. Procedural due *1224 process is not an issue here, so we must determine whether the circuit court applied the correct law. The correct law may derive from a variety of sources including local governmental ordinances. See City of Coral Gables Code Enforcement Bd. v. Tien, 967 So.2d 963 (Fla. 3d DCA 2007).
As we previously discussed, the BOA has the authority to grant a variance of the type sought by the Millses provided the six criteria listed in section 30.43(b)(3) are met. The Code also provides that appeals of the decisions of the BOA regarding variance applications are to the Board and that the Board’s standard of review is de novo. Seminole County, Fla., Land Development Code § 30.43(e) (2011) (“The appeal before the Board of County Commissioners shall be de novo.”). Therefore, when reviewing a decision of the BOA regarding a variance application, the Board should determine whether the six criteria are met before deciding to grant a variance. See Walgreen Co. v. Polk Cnty., 524 So.2d 1119, 1120 (Fla. 2d DCA 1988) (“Since a de novo hearing is conducted by the county commission when an appeal is taken from a decision of the board of adjustment, it follows that the county commission’s determination of whether to grant a variance should be based on the same criteria the ordinance directs the board of adjustment to apply.”).
The BOA clearly applied the six criteria in concluding that the variance application should be denied. The Board, on the other hand, did not, and there is nothing in this record or the order rendered by the Board to indicate otherwise. Rather, the Board concluded that a variance should be granted and then concluded that it was not necessary. When the circuit court began its analysis, it understood the correct issue when it stated that the question was whether the Board’s decision to grant the variance was lawful. The court should have proceeded to answer that question by determining whether the Board applied the six criteria listed in the Code. Instead, the court veered away from that issue by upholding the Board’s contradictory conclusions and proceeding as if a variance had never been entered.
We believe that the methodology utilized by the Board and approved by the circuit court of granting a variance in violation of the Code provisions yet concurrently concluding that the variance is not necessary is wrong, and its use needs to stop. Otherwise, others will be encouraged to employ the same or similar methods to work their will without regard to applicable laws and ordinances. Such methods not only disregard valid laws, they deprive others living in the neighborhood and surrounding areas of the valid application of ordinances that ensure the landscape of the neighboi’hood is kept in conformity with orderly growth and development.
We conclude that the circuit court applied the wrong law, resulting in a miscarriage of justice. We grant the Petition and quash the order under review.
Petition Granted.
BERGER and WALLIS, JJ., concur.