NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ARTHUR LEE SMITH,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Petitioner,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)　　　Case No. 2D17-3409
　　　　　　　　　　　　　　　　　　　　)
DEPARTMENT OF CORRECTIONS　　　　　　)
and COMMISSION ON OFFENDER　　　　　　)
REVIEW,　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Respondents.　　　　　　)
_____)

Opinion filed June 1, 2018.

Petition for Writ of Certiorari to the Circuit
Court for Desoto County; Kimberly Bonner,
Judge.

Arthur Lee Smith, pro se.

Mark Hiers, Assistant General Counsel,
Tallahassee, for Respondent Commission
on Offender Review.

Beverly Brewster, Assistant General
Counsel, Tallahassee, for Respondent
Department of Corrections.


LaROSE, Chief Judge.


　　　　　　Arthur Lee Smith petitions this court for a writ of certiorari. He contests

the trial court's order denying his habeas corpus petition addressed to the revocation of

his conditional release supervision. We have jurisdiction. See Fla. R. App. P.

9.030(b)(2)(B); see also Tarver v. Fla. Parole Comm'n, 990 So. 2d 577, 578 (Fla. 3d DCA 2008) ("[W]e treat the appeal [from the trial court's order denying a habeas petition pursuing review of the parole commission's decision to revoke conditional release] as a petition for writ of certiorari, and review the circuit court's denial pursuant to the applicable standard in cases involving second-tier certiorari."). We deny his petition.

## Background

In 1991, the trial court sentenced Mr. Smith to prison for armed robbery. He was released on conditional release supervision in September 2009. His supervision was to end in 2020. Unfortunately for Mr. Smith, he violated his conditional release by committing several new offenses.

Upon receipt of a notice of violations from the Florida Commission on Offender Review (Commission), Mr. Smith, on July 22, 2016, executed a "Notice of hearing," in which he elected to postpone his conditional release violation hearing until disposition of his new law violations. Thereafter, on March 1, 2017, he signed a Waiver of Conditional Release Violation Hearing. On or about March 15, 2017, the Commission provided Mr. Smith with an amended notice of violations. This amended notice apparently added two additional violations of supervision. Mr. Smith signed the amended notice, and placed his initials next to a preprinted statement affirming that he "hereby freely and voluntarily waive[d] [his] right to [a] violation hearing." The Commission subsequently revoked his conditional release. Several months later, Mr. Smith filed a habeas corpus petition challenging his continued detention. The trial court summarily denied relief.

## Mr. Smith's Certiorari Petition

- 2 -

Mr. Smith seeks immediate release from prison and reinstatement to conditional release. He makes two arguments. First, he denies that he signed the notice postponing his hearing. Absent his agreement, he contends that the Commission had to conduct the violation hearing within forty-five days of his arrest. See § 947.141(2), Fla. Stat. (1991) ("Within 45 days after the arrest of a releasee charged with a violation of the terms and conditions of conditional release, the releasee must be afforded a hearing conducted by a commissioner or a duly authorized representative thereof."). Because no hearing took place within that time, Mr. Smith wants to be released from prison.

Second, Mr. Smith contends that he never signed a valid waiver of hearing for the March 15, 2017, amended notice. He admits to signing a waiver for the original notice. Yet, he asserts: (1) he has no recollection of signing the amended notice; and, (2) even if he did sign it, the notice was legally ineffective because it did not enumerate all of the rights he was waiving.

**Analysis**

We note that "once an inmate has had a full review on the merits of a Parole Commission order in the circuit court, he or she is not entitled to a second plenary appeal of the order in the district court." Sheley v. Fla. Parole Comm'n, 720 So. 2d 216, 218 (Fla. 1998). Rather, we exercise a narrow and limited review. "[T]he district court's role on second-tier certiorari review [is] limited to a two-pronged review of the circuit court decision, not a de novo review of the agency decision." Fla. Parole Comm'n v. Taylor, 132 So. 3d 780, 783 (Fla. 2014) (emphasis omitted) (quoting Broward County. v. G.B.V. Int'l Ltd., 787So. 2d 838, 845 (Fla. 2001)). We are called upon "to determine only whether the circuit court: (1) afforded procedural due process;

and (2) applied the correct law." Id. "The test that has always applied to second-tier certiorari [is]: it should be granted only when there is a departure from the essential requirements of law *resulting in a miscarriage of justice*." Id. (alteration in original) (quoting Nader v. Fla. Dep't of Highway Safety & Motor Vehicles, 87 So. 3d 712, 726 (Fla. 2012)). "A ruling constitutes a departure from the essential requirements of law when it amounts to 'a violation of a clearly established principle of law resulting in a miscarriage of justice.' " Miami-Dade County v. Omnipoint Holdings, Inc., 863 So. 2d 195, 199 (Fla. 2003) (quoting Tedder v. Fla. Parole Comm'n, 842 So. 2d 1022, 1024 (Fla. 1st DCA 2003)).

> Clearly established law can be derived not only from case law dealing with the same issue of law, but also from an interpretation or application of a statute, a procedural rule, or a constitution provision. When the established law provides no controlling precedent, however, certiorari relief cannot be granted because without such controlling precedent, [a district court] cannot conclude that [a circuit court] violated a clearly establish principle of law. Further, a misapplication or an erroneous interpretation of the correct law does not rise to the level of a violation of a clearly established principle of law.

State, Dep't of Highway Safety & Motor Vehicles v. Edenfield, 58 So. 3d 904, 906 (Fla. 1st DCA 2011) (citations and internal quotation marks omitted).

We recognize that "[i]n granting writs of common-law certiorari, the district courts of appeal should not be as concerned with the mere existence of legal error as much as with the seriousness of the error." Combs v. State, 436 So. 2d 93, 95 (Fla. 1983). "[C]ertiorari cannot be used to grant a second appeal to correct the existence of mere legal error." Custer Med. Ctr. v. United Auto Ins. Co., 62 So. 3d 1086, 1093 (Fla. 2010). Rather, second-tier certiorari is meant to rectify "an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with

disregard of procedural requirements, resulting in a gross miscarriage of justice."

Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 527 (Fla. 1995) (quoting Jones v. State, 477 So. 2d 566, 569 (Fla. 1985) (Boyd, C.J., concurring specially)).

Mr. Smith's first argument is meritless. Even if he did not sign a document postponing the hearing, no law commands that a failure to conduct a revocation hearing within forty-five days must result in his release. "Nothing in [section 947.141] provides that the failure to timely conduct a conditional release supervision revocation hearing is jurisdictional." Gillard v. State, 827 So. 2d 316, 317 (Fla. 1st DCA 2002). Moreover, as Gillard explained:

> [R]evocation hearings are governed by due process considerations and are subject to the requirement that they be conducted within a reasonable time. If the applicable statute sets forth a definite time period for the hearing, and the time period is violated, the delay is presumed unreasonable. To be entitled to relief, the releasee must show that he was prejudiced by the alleged delay in addition to showing the statutory violation.

Id. (emphasis added) (citations omitted). Mr. Smith makes no such showing. See Danluck v. Lotspeich Co., 334 So. 2d 32, 34 (Fla. 3d DCA 1976) ("On certiorari, as on appeal, there is a presumption as to the correctness of the trial court's rulings, and the burden rests on the petitioner for certiorari to make any error complained about to appear fully.").

Mr. Smith's failure to show prejudice dovetails with another reason that his first argument cannot succeed. As reflected in the trial court's thorough order denying habeas relief, Mr. Smith validly postponed his hearing, pending "disposition of . . . charges against [him]." He chose to "waive the forty-five (45) day time constraint to have a violation hearing." Mr. Smith cannot now be heard to complain that he was

deprived of a timely hearing. See Fla. Admin. Code R. 23-23.011(4)(d) (2016) ("The granting of a continuance or postponement on behalf of the conditional releasee constitutes a waiver by the conditional releasee of all time constraints, any requirement for a local hearing, and shall postpone disposition of the violations until notification is received by the Commission that the pending criminal charges have been resolved or the Releasee elects to proceed with or waive the hearing."). Nor can we say that the trial court's conclusions were based on the incorrect law.

The crux of Mr. Smith's second argument is that he signed no valid waiver for the March 15, 2017, amended notice. At first blush, the record seemingly supports Mr. Smith's position. Although he signed a Waiver of Conditional Release Violation Hearing for the original notice, he signed no such form for the amended notice. Under careful scrutiny, however, this incongruity is unavailing.

On the March 15, 2017, amended notice, Mr. Smith initialed and signed a provision stating that he was waiving his right to a violation hearing. With the exception of the addition of offenses, the amended notice was identical to the original July 22, 2016, notice. Despite the absence of a formal waiver like the one he signed on March 1, 2017, our record amply demonstrates that the trial court correctly concluded that Mr. Smith intended to waive a hearing for the amended notice.

Mr. Smith's petition falters upon a comparison of the original notice and the amended notice. The original notice listed five violations: two burglary offenses (paragraphs 1 and 3), two grand theft offenses (paragraphs 2 and 4), and a curfew violation (paragraph 5). The State subsequently nolle prossed the theft charges. Mr. Smith pleaded nolo contendere to the reduced charges of trespass, with the judgments and sentences filed on March 1, 2017. Although the amended notice identified the five

violations alleged in the original notice, the amended notice also added the two trespass convictions, as though they were new violations of conditional release. In fact, they merely represented the adjudication of the violations alleged in paragraphs 1 and 3.

We cannot say that the trial court's denial of habeas relief constituted a departure from the essential requirements of law. The factual scenario presented to us does not implicate any due process concerns. See, e.g., McRae v. State, 88 So. 3d 384, 385 (Fla. 2d DCA 2012) (holding that revocation of probation based on an uncharged violation deprives the defendant of due process and constitutes fundamental error); Singletary v. State, 537 So. 2d 674, 674-75 (Fla. 2d DCA 1989) (recognizing that the minimum procedural safeguards imposed by due process include the probationer's right to notice of the claimed violations of his probation). Mr. Smith received notice and an opportunity to be heard from the Commission.

Any one of the alleged violations would have been sufficient to revoke his conditional release. See Logan v. State, 964 So. 2d 209, 210 (Fla. 5th DCA 2007) (observing that when a conditional releasee "violate[s] a condition of release prior to the expiration of their full, pronounced prison term, gain time and release are revoked and they may be re-incarcerated for the balance of their sentence" (emphasis added)).

Furthermore, Mr. Smith cannot now complain that he was broadsided by the absence of a more formal waiver of hearing pertaining to the amended notice. As part of the March 1, 2017, waiver, Mr. Smith agreed to waive a number of rights. Evidently, Mr. Smith was aware of the rights and processes he abandoned when he signed the amended notice, a short two weeks later. Although the waiver for the amended notice is not as detailed as the March 1, 2017, waiver, Mr. Smith cannot demonstrate that he was caught unawares of the import and effect of affixing his initials

and signature to the amended notice, much less that the absence of a formal waiver constitutes a miscarriage of justice.

It is true that a conditional releasee may withdraw his previously executed violation hearing waiver within fourteen days after execution of the waiver. See Fla. Admin. Code R. 23-23.011(4)(c)(1). Mr. Smith does not contend that he would have withdrawn a formal waiver to the amended notice had he been offered and signed one. Instead, by signing the waiver pertaining to the original notice, Mr. Smith demonstrated his intent to waive a revocation hearing. Furthermore, as the new law violations served as the basis for the amended notice, and they had been adjudicated at the time the amended notice was issued, we cannot conceive of Mr. Smith electing to revoke such a waiver.

Because the trial court applied the correct law and afforded procedural due process, we must deny the petition on the merits.

Petition denied.

CRENSHAW and LUCAS, JJ., Concur.